No. 36,458

MAGNOLIA PETROLEUM COMPANY, *Appellee, v.* JOHN W. MOYLE, *Appellant.*

(165 P. 2d 419)

Opinion filed January 26, 1946.

*Roy C. Davis, Warren H. White, Frank S. Hodge, Wm. H. Vernon* and *Eugene A. White,* all of Hutchinson, were on the briefs for the appellant.

*R. C. Russell,* of Great Bend, *Joseph G. Carey, W. F. Lilleston, George C. Spradling, Henry V. Gott* and *Ralph M. Hope,* all of Wichita, were on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.; This was an action to quiet title to certain mineral interests in and under the northwest quarter of section 23, township 31, range 38, in Stevens county, hereafter referred to as the real estate. The principal matter in controversy was the force and effect of a judgment, sale and sheriff's deed in a previous tax foreclosure action covering the real estate. The cause was submitted to the trial court upon the pleadings, an agreed statement of facts and briefs of the parties, and it rendered judgment in favor of plaintiff. The defendant appeals.

The record discloses the following: The plaintiff, hereinafter re-

ferred to as the company, is a Texas corporation, authorized to do business in Kansas. Under date of October 31, 1927, the then owner of the real estate executed and delivered to the company a mineral deed conveying an undivided one-half interest in the minerals in and under the real estate with a perpetual and irrevocable right and easement of ingress and egress in the real estate for the purposes of exploration and development, to conduct operations, to erect structures necessary, to have right of way for and to lay and operate pipe lines, telegraph and telephone lines, free use of water, and to have and enjoy all other rights, easements and privileges necessary, incident or convenient in the operation of the real estate for the production of minerals, provided that grantor upon paying one-half of all expenses and costs of production, should be entitled to receive one-half of the net profits arising from the sale and disposition of said minerals in their natural state and as produced and sold from the real estate, all as more specifically set forth in the mineral deed. Without specifying the exact terms, the company also received the right to lease the real estate for mineral rights as fully as if it were the absolute owner of the entire title, provision being made for division of income, royalties, rentals and bonuses in any lease. The above deed was duly recorded January 2, 1928. Since that date Stevens county duly assessed and levied taxes against the company's mineral interest and the company promptly paid the taxes assessed for each year to and including 1943, and no tax on the mineral interest ever became delinquent.

On October 31, 1937, Mildred M. Robinson and R. B. Robinson, her husband, then the owners of the real estate, executed and delivered to the company an oil and gas lease of common form. The primary term of this lease was ten years. Provision was made for exploration or for delay rentals. There has been no default under this lease but the real estate has not been explored for oil or gas.

On April 8, 1942, the board of county commissioners of Stevens county instituted a tax foreclosure action, among the parties defendant being Mildred M. Robinson and R. B. Robinson, her husband, and Magnolia Petroleum Company, a corporation. In the petition it was alleged that the defendants named in the caption were owners, supposed owners, mortgagees and lien holders, or have or claim to have some interest in the real estate described in Exhibit "A" attached to and made a part of the petition; that the several tracts of real estate had been sold at tax sale and had not been re-

deemed; that the county had a lien because of unpaid taxes; and other appropriate allegations. In the exhibit attached the above described real estate was listed as being sold for taxes of 1933 on September 4, 1934, and that the amount of taxes, interest and penalties to June 1, 1942, was $268.08 and that the name of the owners, supposed owners and parties having or claiming to have some interest therein or thereto were: "Mildred M. Robinson and R. B. Robinson, her husband; Magnolia Petroleum Company, a corporation." Thereafter personal service of summons was made on the Robinsons and service by publication was had on the company. These defendants made default and judgment was entered for the sale of the real estate, and that by the sale of each tract involved, all right, title and interest of the defendants be barred. Notice of sale was given and at the sheriff's sale held on September 23, 1942, the real estate was sold for $950 to John W. Moyle, who is hereafter referred to as Moyle. This sale was confirmed and under date of October 8, 1942, a sheriff's deed was executed and delivered to Moyle which was recorded October 15, 1942.

On March 21, 1944, the action out of which this appeal arises was commenced by the company's filing a petition in which Moyle was the only defendant, alleging it was a Texas corporation, authorized to do business in Kansas, and that it was the owner of an undivided one-half interest in and to all the oil, gas and other minerals in and under the real estate described and that Moyle claimed some right therein, with other allegations pertinent to a quiet-title action. The prayer was that Moyle be required to set up his claim; that the company be decreed the owner in fee simple and that Moyle be barred; and that the company's title be quieted. Moyle filed an answer and cross petition, but we need notice only his answer in which he alleges he is owner of the real estate, free and clear of any claims of the plaintiff; that he is in possession of the real estate and his ownership is based on the above mentioned sheriff's deed and the proceedings leading up to its execution and delivery and that the company's right in the real estate was adjudicated in that action, and the judgment is final. Other allegations need not be noted. Moyle prayed that his title be quieted as against the company. The company's reply need not be noted, further than it admitted Moyle was the grantee in the sheriff's deed issued pursuant to the proceedings in the tax foreclosure action.

The trial court found that the company was the owner of an undivided one-half interest in all the oil, gas and other minerals in and that may be produced from the real estate, and all other rights, titles and property vested in it by reason of the mineral deed to it dated (recorded) January 2, 1928, and that its title should be quieted against Moyle, and it rendered judgment accordingly. From this judgment Moyle duly perfected his appeal to this court. His specifications of error cover the matters herein discussed.

In this court Moyle contends that any rights and claims the company had in the real estate were settled and determined in the tax foreclosure action; that the matter of such right and claim is res judicata; and that the company, in the present action, may not collaterally attack the judgment in the first mentioned action. The gist of the company's argument, in support of the trial court's judgment, is that in order for the state or county to foreclose a tax lien, there must have been such a lien; that there was none in the tax foreclosure suit; that Moyle, who purchased at the sale, was a purchaser *caveat emptor* and therefore not in good faith; that he was bound to take notice of the tax records and therefore the judgment in the quiet-title proceedings was not erroneous. In support of its contentions the company relies principally on *Montgomery County v. Wilmot*, 114 Kan. 819, 221 Pac. 276, to which reference is later made.

The first question for consideration is the binding force of the judgment in the tax foreclosure action. The statutes in force when it was commenced and completed are found in G. S. 1943 Supp., sections of which are hereafter noted. For present purposes we note that under 79-2801 it is provided that in all cases in which real estate has been sold and bid in by the county at any delinquent tax sale and shall remain unredeemed for a period of three years after such sale, the board of county commissioners shall order the county attorney to institute an action in its name "against the owners or supposed owners of such real estate and all persons having or claiming to have any interest therein or thereto," and that the petition shall state the amount of taxes, charges, interest and penalty against each tract of real estate "and the name of the owner, supposed owner, and party having or claiming to have any interest therein or thereto," and that when the petition is filed summons shall issue and be personally served or publication made as provided in

other cases under the code of civil procedure. Under 79-2802 provision is made for joinder of parties defendant. Under 79-2803 issues may be joined as in other civil actions, and after issues are joined the action shall stand for trial. This section provides in detail for the type of judgment to be rendered and for redemption of any tract. Section 79-2804 provides that after ten days from the date of the judgment, an execution or order of sale shall issue, and for a sale by the sheriff, and upon confirmation of the sale for the issuance of a sheriff's deed to the purchaser and that when the deed is filed for record it shall vest in the purchaser or grantee named as against all persons, including corporations, a fee simple title to the real estate, and said deed shall be prima facie evidence of the regularity of all proceedings prior to the date of filing the same for record. Section 79-2804b recites as follows:

"Legal or equitable actions or proceedings may be brought to open, vacate, modify or set aside any judgment rendered for taxes, interest and costs or any order of sale made under the provisions of section 19 [79-2803] hereof, or any sale made under the provisions of section 20 [79-2804] hereof but every such action or proceeding, including those brought on the grounds and in the manner prescribed by the code of civil procedure, must be commenced within six months after the date of the sale of the real estate, which was affected by such judgment, order of sale or sale, was confirmed by the court. The provisions of this section shall apply to all judgments, orders of sale, and sales whether the purchaser at the foreclosure sale be the county or an individual."

Reviewing the facts in the light of the above statute, it clearly appears that each procedural step was followed in the tax foreclosure suit. The company refers to the fact that it had an agent in Kansas upon whom service could have been made, but it does not argue it was not properly served by publication, and it could not well do so, for not only does the statute above mentioned (79-2801) provide for service by publication, but it makes reference to the code of civil procedure, under which, in actions of this type, such service may be had. (G. S. 1935, 60-2525.) By its own pleading it appears the appellee is a foreign corporation. Statutes providing for service against foreign corporations by serving some designated person within the state, have been held to be cumulative and supplementary to other methods of service, and not exclusive. See *Betterment Co. v. Reeves*, 73 Kan. 107, syl. ¶ 3, 84 Pac. 560; and *Jones v. Insurance Co.*, 83 Kan. 44, syl. ¶ 1, 109 Pac. 1077. See also *Nowak v. Insurance Co.*, 103 Kan. 778, 176 Pac. 654. The

company was properly served with summons in the tax foreclosure action. Without restatement of allegations in the petition in that case, it appears that taxes on the real estate were unpaid and the real estate unredeemed and that the company was properly charged as an "owner, supposed owner and one having or claiming to have any interest" in the real estate; that the company made default; that a proper judgment was rendered; a sheriff's sale duly had; a deed issued to Moyle and duly filed for record by him on October 15, 1942. For a period of six months after the date of the sale of the real estate on September 23, 1942, the company had its opportunity to have opened, vacated, modified or set aside, the judgment rendered against it, under G. S. 1943 Supp., 79-2804b, quoted above, but that it did not do, and the judgment became final, unless it was a void judgment.

The company does not clearly contend the judgment against it in the tax foreclosure action was void, although perhaps that is the general effect of its argument. We pause here to note the company had other interests in the real estate other than an ownership of an undivided one-half of the minerals, on which it is conceded it paid its taxes. Under the deed granting the mineral interest to it, the company had not only rights of ingress and egress, which may be termed easements, but it also had conveyed to it the right to use the surface of the real estate to construct pipe lines and communication lines, as well as the right to lease the lands for mineral development as though it were the absolute owner of the entire title, as more fully appears from the statement of facts heretofore made. In addition, it had the rights given it under the subsequently executed oil and gas lease. To say that the company had no interest in the real estate, as distinct from its interest in an undivided one-half of the minerals, is to ignore the plain facts disclosed by the record. The company's contention is that having paid taxes assessed against its mineral interest, that interest was not subject to sale in a tax foreclosure action. It directs our attention to a statement in *Montgomery County v. Wilmot,* 114 Kan. 819, 221 Pac. 276, where it was said, in part:

"Perhaps it is not stating it too broadly to say that one of the fundamental prerequisites to a valid sale of real property for taxes is that there is a tax due and unpaid at the time of the sale. Not only is this prerequisite essential to fair dealing between a sovereign and its citizens, but it is either specifically or necessarily by implication embodied in every provision for the sale of real property for taxes." (p. 824.)

A review of the above case discloses that a tax foreclosure action was commenced in April, 1921, and that service by publication was had against one Arra Ballard, who owned real estate on which tax had not been paid. On June 14, 1921, a judgment was rendered and subsequently the real estate was sold at sheriff's sale, and that sale was confirmed, a deed executed and recorded. After judgment but before the sale, the mother of Arra Ballard paid for her to the county treasurer, a certain amount and received a redemption certificate. The opinion treats of the sufficiency of the redemption, but we need not notice that phase. On September, 20, 1922, Arra Ballard, a minor, by her next friend, filed her application under the civil code to open the judgment, her application setting out facts entitling her to relief. (It may here be observed that under the tax foreclosure act then in force, the six months provision for opening judgments was not in effect.) The trial court opened the judgment and upon trial granted Arra Ballard relief, including setting aside the sheriff's deed to the purchaser, who appealed to this court. In disposing of that appeal this court held:

"In a suit by a county to foreclose a tax lien upon real property owned by a minor, where an offer to redeem was made to the clerk of the district court and at his direction the payment was made to the county treasurer and the property redeemed from the tax sale, before the sale of the property by the sheriff in the foreclosure suit, *held,* that the sale by the sheriff and the sheriff's deed issued thereon are voidable and should be set aside upon timely application." (Syl.)

Notwithstanding the use of some language in which the company finds comfort, it is clear that in the above case a timely application was made to set aside the judgment, and that at most this court held the proceedings leading up to the issuance of the sheriff's deed were voidable and not void.

In the instant case, the company had an interest and claim upon the real estate over and beyond its interest in the undivided one-half of the minerals, it was not only a proper but a necessary party, it was duly served with summons, and it did not defend the action. Later, and without making any application under the statute which, if timely invoked, would have given it relief if it was entitled thereto, the company brought its action to quiet title in which it sought collaterally to attack the judgment in the tax foreclosure action. It appears the trial court, in the tax foreclosure action had jurisdiction of the action, of the subject matter of the action and of the parties to the action. The petition in that action stated a

cause of action, and upon trial the court had power and jurisdiction to render a judgment. Such is the established law of this state. Having power to decide the action, it is now of no consequence that its judgment may have been erroneous. If it were, the remedy was by appeal or by invoking in time the provisions of G. S. 1943 Supp., 79-2804b, neither of which was done. As bearing on the above see, e. g., *Hoover v. Roberts*, 144 Kan. 58, 62, 58 P. 2d 83; *Union Central Life Ins. Co. v. Pletcher*, 144 Kan. 359, 58 P. 2d 1158; *Smith v. Power*, 155 Kan. 612, 127 P. 2d 452, and cases cited. The company was not entitled to a judgment quieting title.

In view of our conclusion other matters referred to in the brief do not need attention.

The judgment of the trial court is reversed, and the cause is remanded to the trial court with instructions to render judgment in favor of Moyle, quieting his title as against the company.

Hoch, J. (dissenting): I dissent on the fundamental grounds that since the taxes on appellee's real estate—an ownership of minerals in place—were at no time delinquent the county and consequently the court had no jurisdiction of the subject matter, as far as such ownership was concerned, and hence could not make a valid order of sale. The result of this decision is that real estate in this state owned by a nonresident may be erroneously bid in for "delinquent" taxes and subsequently sold at foreclosure sale— all without the owner's actual knowledge—even though the taxes have at all times been paid and are shown as paid on the county's books, and unless the owner learns of the sale and takes action within six months after the sale he is irrevocably divested of all title and interest in the property. I do not think the statute requires such a result or that the legislature so intended.

It is elementary that before there can be a valid judgment there must be jurisdiction of the subject matter as well as of the parties. As to the parties I am not questioning the sufficiency of service by publication in a case of this kind. But service does not create jurisdiction of the subject matter.

Under the statute, under the general rule and under the logic of many decisions of this court in tax statute cases tax delinquency is a *condition precedent* to the right of the county to purchase. There being no authority in law to "bid in" property upon which the taxes were fully paid I do not know how the court acquired jurisdiction of the subject matter.

The essential facts, as stipulated by the parties, may be briefly restated. On October 31, 1927, the owners of the land executed and delivered to the appellee a mineral deed conveying an undivided one-half interest in the minerals in place together with certain other property and contract rights as set out in the court's opinion. The mineral deed was duly recorded on January 2, 1928; the mineral interest so conveyed was thereupon separately listed and valued by the county and separately taxed, all in compliance with G. S. 1935, 79-420. Thereafter the taxes so assessed were paid regularly by the appellee each and every year up to and including 1943 and such payments were regularly recorded upon the county's books. It was stipulated that "no tax assessed or levied against said mineral interest and other contract rights so owned and held by plaintiff has ever become delinquent." The taxes on the remainder of the fee—surface rights and half interest in the minerals in place—retained by the grantors became delinquent and in due course the county foreclosed the tax lien. Appellee not only owned its mineral interest upon which it kept the taxes paid for 16 years, but also had, under the instrument, some contractual rights—easements or lease rights—as to the remainder of the fee upon which the taxes were delinquent. It was served with notice by publication in the foreclosure sale. There is no contention it had any actual notice of the proceedings. However, I do not contend that service by publication is not good in a case of this sort even though there is a registered agent upon whom personal service can be had. Assuming the service to be good it would follow that appellee was foreclosed as to its easements or other rights incident to the real estate which the grantors retained and upon which the taxes were delinquent. Whatever rights of ingress and egress, leasing rights or other such rights appellee may have lost, that does not however affect its ownership of real estate under the mineral deed.

It is well settled in this state that a conveyance of minerals in place carves a subsurface estate out of the fee, creates a separate freehold estate of inheritance to be classed and taxed as real estate. (*Mining Co. v. Atkinson*, 85 Kan. 357, 116 Pac. 499; *Mining Co. v. Crawford County*, 71 Kan. 276, 80 Pac. 601; *Richards v. Shearer*, 145 Kan. 88, 91, 93, 64 P. 2d 56; *Shaffer v. Kansas Farmers Union Royalty Co.*, 146 Kan. 84, 69 P. 2d 4.) Such an instrument must be recorded and listed for taxation (G. S. 1935, 79-420) and that

was done. The fact that appellee's deed gave it only an undivided half interest in the minerals in place instead of the entire mineral interest does not change the situation. It was still a real estate interest, separated from the remainder of the fee. (*Shaffer v. Kansas Farmers Union Royalty Co.*, supra.)

I am not unmindful of the fact that our statutes now provide for judicial sale in tax foreclosures, and that the statute provides for action to foreclose tax liens "in all cases in which real estate has been or shall be sold and bid in by the county at any delinquent tax sale" etc. But certainly this refers only to property lawfully bid in where taxes were delinquent. If the county had no jurisdiction how did the court acquire jurisdiction of the subject matter?

We have repeatedly said that methods of tax collection are to be found exclusively in the statutes and that tax statutes are to be strictly construed in favor of the property owner. And we have repeatedly said that compliance with the statute is essential to *acquisition of jurisdiction* (*Bryner v. Fernetti*, 141 Kan. 446, 41 P. 2d 712; *Madigan v. Smith*, 137 Kan. 269, 20 P. 2d 825; *Crawford County Comm'rs v. Radley et al.*, 134 Kan. 704, 8 P. 2d 386). A recent case in point is *Morris County Comm'rs. v. Cunningham*, 153 Kan. 340, 110 P. 2d 783. The case tested the validity of action by the county commissioners in leasing property previously bid in by the county for taxes as provided for in G. S. 1935, 79-2701. Taxes were delinquent, the property was regularly bid in but the commissioners leased the property prior to the expiration of a three-year period provided by the statute. It was held that compliance with the three-year provision was a condition precedent to the exercise of jurisdiction by the county under the statute. In a later case involving the same property (*Cunningham v. Blythe*, 155 Kan. 689, 691, 127 P. 2d 489) we again emphasized the proposition that compliance with the statute is essential to the exercise of *jurisdiction* in the matter.

The Kansas cases referred to and others that might be cited are in line with the authorities generally which hold that in the case of tax foreclosure sales compliance with fundamental requirements is essential to the acquisition of jurisdiction of the subject matter. This rule is not in conflict with many cases which hold that certain procedural defects do not make the sale void, but only voidable. Certainly there is nothing quite so fundamental in a tax foreclosure

case as *tax delinquency.* That is the very basis of the whole proceeding.

In 61 C. J. 1120, 1121 it is said:

*"Before there can be a valid sale of land for taxes it is essential that such taxes should have remained due and unpaid . . . for* the length of time prescribed by the statute; . . . When the taxes upon a particular parcel of real estate have once been paid . . . to an officer authorized to receive them, a subsequent sale of land for those taxes is *void"* (citing many cases from many jurisdictions). (Italics supplied.)

See, also, 51 Am. Jur. 896 where "nonpayment of the tax" is listed as one of the essentials before any procedure for sale of lands for nonpayment of taxes can be regarded as "due process of law."

There is, I am aware, a class of cases involving controversies over property rights between private parties in which collateral attack upon the judgment has not been permitted, although very serious defects were shown to have existed in the pleadings or in the proceedings leading up to judgment. Such cases are not persuasive here. As between private parties the court may acquire jurisdiction of the subject matter in spite of irregularities which might have been fatal if subjected to timely attack. But a different situation exists in the case of tax statutes where compliance with fundamental requirements is jurisdictional in character. And it should be so. The sovereign owes that to the citizen. Just as the citizen's property may be taken if the taxes are not paid, the citizen is entitled to immunity from such taking if he keeps the taxes paid. Although the case of *Montgomery County v. Wilmot,* 114 Kan. 819, 221 Pac. 276, referred to in the court's opinion turned upon a somewhat different issue the rule of law quoted from the opinion is here pertinent and bears repeating. It was there said:

"Perhaps it is not stating it too broadly to say that one of the fundamental prerequisites to a valid sale of real property for taxes is that there is a tax due and unpaid at the time of the sale. Not only is this prerequisite essential to fair dealing between a sovereign and its citizens, but it is either specifically or necessarily by implication embodied in every provision for the sale of real property for taxes." (p. 824.)

That is a sound rule, in line with the authorities generally. It should be followed, and the judgment affirmed.

BURCH, J., joins in the foregoing dissenting opinion.