No. 36,458

Magnolia Petroleum Company, *Appellee*, v. John W. Moyle, *Appellant*.

(175 P. 2d 133)

Opinion on rehearing filed December 7, 1946. (For original opinion of reversal see 160 Kan. 722, 165 P. 2d 419.)

*Roy C. Davis, Warren H. White, Frank S. Hodge, Wm. H. Vernon* and *Eugene A. White,* all of Hutchinson, were on the briefs for the appellant.

*R. C. Russell,* of Great Bend, *Joseph G. Carey, W. F. Lilleston, George C. Spradling, Henry V. Gott* and *Ralph M. Hope,* all of Wichita, were on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: After the original submission of this cause an opinion was filed January 26, 1946, which appears in 160 Kan. 722, 165 P. 2d 419. A rehearing was granted, the appeal has been reargued and upon consideration the court has concluded that a correct decision was not made in its first opinion. To avoid references to the first opinion for a statement of the facts, the case will be restated.

The action out of which the appeal arose was one to quiet title to real estate, under circumstances more fully set out later. The trial court rendered judgment in favor of the plaintiff and the defendant appeals. The parties will be referred to hereafter as Magnolia and Moyle.

In its petition filed in March, 1944, Magnolia alleged it was a corporation under the laws of Texas and qualified to transact business in Kansas; that it was the owner in fee simple of an undivided one-half interest in and to all of the oil, gas and other minerals in and under and that may be produced from the northwest quarter of section 23, township 31, range 38 west, in Stevens county, Kansas, and that Moyle claimed an adverse interest, but that Magnolia claimed he had no interest and should have its title quieted against him, and it prayed for judgment accordingly.

Moyle filed his answer and cross petition. Insofar as it is necessary to notice, the answer contained a qualified general denial and an allegation that Moyle was the owner and in possession of the above described real estate under a sheriff's deed recorded October 15, 1942, and under the proceedings leading up to its execution and delivery, in the action of *Board of County Commissioners of Stevens County v. Andrews et al.,* and hereafter referred to as the tax foreclosure action, and that Magnolia's rights were adjudicated in that action and such adjudication had become final. Under his cross petition Moyle sought to quiet his title against the Magnolia.

In its reply the Magnolia pleaded that it had acquired title to the mineral rights by a deed from J. C. Gerrond, dated November 2, 1927, and recorded January 2, 1928, in Book F Misc., at page 370, and that since the filing of the deed Stevens county duly assessed

and levied taxes on its mineral interest and it had paid the taxes, and that since October 31, 1927, it had been in peaceable possession. A copy of the deed was attached as an exhibit and is referred to later. It admitted the proceedings under which the sheriff's deed to Moyle was issued but denied that the deed affected its title. It also pleaded that it was duly authorized to do business in Kansas on October 31, 1927, and at all times since and had appointed a registered agent on whom process might be served; that no process had been served upon it in the tax foreclosure suit; that no process or service of summons had been made upon it except by publication although actual service of summons could at all times have been obtained upon it and that it had no knowledge of the tax foreclosure proceedings or the issuance of the sheriff's deed until during the month of October, 1943. Magnolia's answer to Moyle's cross petition need not be noticed.

The deed from J. C. Gerrond to Magnolia conveyed—

*"An undivided one-half interest in all minerals,* including oil, gas, coal, and all other minerals, whether solid, fluid, or volatile, lying in or under or that may be produced or reduced to its possession and saved upon the following described real estate situated in the county of Stevens in the state of Kansas, to-wit:

"The North One-half of Section 23, Township 31 South, Range 38 West.

"Together with the perpetual and irrevocable right, privilege and easement of ingress and egress in, upon, and from said lands at all times for the purpose of mining, drilling, and exploring said land for oil, gas and all other minerals and removing the same therefrom together with the use of such amount of the surface of said land as is necessary or useful to produce, save, store, refine, mill and remove said minerals, including salt water, or any of them if found, and to extract or manufacture any produce therefrom and to conduct all operations and erect or use thereon all such buildings, derricks, tanks, structures, machinery, and equipment as may be necessary or proper for any or all such purposes, and to have the right of way on said land for, and the right to lay and operate thereon pipelines, erect and operate telephone and telegraph lines for the use of grantee in the business conducted thereon, to repair and remove from said lands any of grantee's properties thereon, including the right to draw and remove casing therefrom, and to have and to use, free of charge, water from said land, except water from grantor's well, for operations thereon, and to have and enjoy all other rights, easements and privileges necessary, incident to, or convenient for the economical operation of said land for the production of said mineral or minerals, or as are reasonably required for conducting and carrying on all things herein granted, provided, however, that grantor upon payment to grantee of one-half of all expenses and costs of producing such minerals, shall thereupon be entitled to one-half (½) of the net profits arising from the sale and disposition

of said minerals in their natural state and as produced from and sold on said realty."

It was further provided in the deed that:

"It is hereby expressly declared that it is intended by this instrument to convey the fee simple title to an undivided one-half of all the minerals and mineral rights, including oil, gas, and all other minerals, whether solid, fluid, or volatile in, within, upon, or underlying or that may be produced from the above described lands, and all the grantor's rights to operate for said minerals, and deal or contract with regard thereto, including the leasing thereof as fully to all intents and purposes as if the said grantee were the absolute owner of the entire title and estate in said lands and without any obligation whatsoever on the part of the grantee, either express or implied at any time to drill, mine, develop or otherwise explore for any oil, gas, or other minerals in or upon said lands, but in the event grantee, its successors or assigns, develops said minerals and produces oil, gas or other minerals from said described lands, then grantor shall have the right to repay grantee their proportionate share of all expenses for developing and saving said minerals and receive their proportionate share of the net profits arising from the sale of said minerals in their natural state as produced from and sold on said realty. In the event grantee executes a mineral lease upon said premises, which it is hereunto duly authorized so to do, grantor shall be entitled to a one-half undivided interest in all of the royalties, rentals and bonuses provided for in such lease."

The parties entered into a stipulation of facts covering the status of the parties, the execution and filing of the mineral deed; that the mineral interest of Magnolia was assessed for taxation and that it had paid the taxes thereon; that Moyle was the grantee named in a sheriff's deed, a copy of which was made part of the stipulation, which deed was issued pursuant to the tax foreclosure proceeding, a copy of the proceedings being made a part of the stipulation; that in that action no service was attempted upon the Magnolia other than by publication. It was further stipulated that about May 25, 1937, the then owners in fee simple of the above described real estate executed and delivered to Magnolia an oil and gas lease on the described real estate and that there had been no default by Magnolia in the payment of rentals in lieu of drilling or otherwise at any time prior to the execution and delivery of the sheriff's deed above noted, and further that the land had not been explored for oil or gas.

It is not necessary that we detail the various proceedings in the tax foreclosure action for there is no contention that the pleadings in and of themselves are faulty. We do note, however, that these proceedings disclose that a sheriff's sale of the real estate involved

to Moyle, was confirmed on October 7, 1942. In disposing of contentions hereafter considered, we shall make such reference to the tax foreclosure action as is necessary.

The quiet-title action was submitted to the trial court upon the stipulated facts, and it rendered judgment quieting Magnolia's title to an undivided one-half interest in all of the oil, coal, gas and other minerals lying in and under the above described real estate, "together with all other property and contract rights vested in plaintiff (Magnolia) by reason of the mineral deed recorded in the office of the Register of Deeds of Stevens County, Kansas, in Book F, Misc., at page 370, . . ."

From the above judgment Moyle duly appealed to this court, upon consideration of which this court rendered its decision mentioned above.

It may here be noted that when Magnolia filed its motion for a rehearing additional briefs were filed, and *amici curiae* were also permitted to file briefs. From these briefs, and from the argument on rehearing, it appears there is no dispute as to the regularity of the tax foreclosure proceedings, except as hereafter noted, and that unless the proceedings and the judgment rendered thereunder may be attacked collaterally by Magnolia, it is not entitled to recover. Two main questions are presented: 1. Was Magnolia properly served with summons in the tax foreclosure action? 2. Did the district court have jurisdiction of that action insofar as Magnolia was concerned? These will be considered in order. In the discussion of both questions, it is noted that the tax foreclosure action was commenced April 8, 1942, and the sheriff's sale held under it was confirmed October 7, 1942. References hereafter made are to the tax foreclosure statutes and other statutes then in effect.

1. Was Magnolia properly served with summons in the tax foreclosure action? If the service was fatally defective the judgment against it was open to collateral attack. The petition in that action alleged that with respect to the real estate presently involved, the company was an owner, supposed owner or a party having or claiming to have some interest therein or thereto. An affidavit for service by publication was made by the county attorney. No complaint is made as to its form or sufficiency and we note only that it was stated it was not known whether Magnolia Petroleum Company was legally existing or dissolved, and if not in existence,

whether there were any officers or successors, trustees or assigns, etc., and that with due diligence plaintiff was unable to procure actual service of summons within the state of Kansas and desired to obtain service by publication of summons. No complaint is made of the publication of summons which followed, nor of proof thereof. The journal entry of judgment stated that the court had carefully examined the publication notice and proof thereof and approved them.

On the original submission the question of service of summons was not stressed and received only brief attention in our first opinion.

The argument now presented that Magnolia was not properly served runs thus: Magnolia is a foreign corporation authorized to do business in Kansas and actual service of summons could have been had upon it. The corporation was doing business in Kansas and under G. S. 1935, 17-501, was required to file an irrevocable consent that service of summons for it might be served upon the secretary of state; that under G. S. 1941 Supp., ch. 17, art. 44, it was required to designate a registered agent; that notwithstanding any allegation in the affidavit for service by publication that it was a foreign corporation, the trial court *judicially* knew that it was legally and factually possible to procure actual service within the state and, therefore, that service of summons by publication was not permissible under the civil code (G. S. 1935, 60-2525 *et seq.*). The record does not sustain the premise for the argument. The tax foreclosure statute provided for service, either personally or by publication, as provided in other cases under the civil code. (See G. S. 1941 Supp., 79-2801.) The civil code provides for publication summons, where the "plaintiff upon diligent inquiry is unable to ascertain whether a *corporation, domestic or foreign* named as defendant, *continues to have legal existence or not* . . ." (G. S. 1935, 60-2525.) (Emphasis supplied.)

The affidavit for service by publication was in accordance with the above provision. There was no allegation Magnolia was or was not a foreign or domestic corporation. It makes no difference that in the quiet-title action it was agreed that Magnolia was a foreign corporation and authorized to do business in Kansas—that situation was not disclosed by the record in the tax foreclosure case.

No appeal was taken from the judgment in the tax foreclosure action, nor has that judgment, including approval of the service by

publication, ever been directly attacked. Even though some statements of the affidavit were false, the service cannot be collaterally attacked. (See *Davis v. Land Co.*, 76 Kan. 27, 90 Pac. 766.) The basis for Magnolia's contention not being present in the situation now before us, we need not decide whether it is any longer possible to obtain service by publication on a foreign corporation authorized to do business in this state. Previous decisions of this court have held, however, that statutes providing for service against foreign corporations by serving some designated person within the state are cumulative and supplementary to other methods of service and are not exclusive. See *Betterment Co. v. Reeves*, 73 Kan. 107, syl. ¶ 3, 84 Pac. 560; *Jones v. Insurance Co.*, 83 Kan. 44, syl. ¶ 1, 109 Pac. 1077; *Nowak v. Insurance Co.*, 103 Kan. 778, 176 Pac. 654. Notice, also, the language used in G. S. 1941 Supp., 60-2522.

2. Did the district court have jurisdiction of the action insofar as Magnolia was concerned?

The general contention of Moyle is that in the tax foreclosure action the trial court had jurisdiction of the subject matter of the action and of the parties; that the petition alleged the involved real estate had been bid in at a tax sale duly held as provided by law; that the court in due course had rendered a judgment; that by the judgment the rights of Magnolia in the real estate were adjudicated; that no appeal was taken from the judgment nor was there any timely attack thereon; that that judgment may not be attacked collaterally, and therefore the trial court erred in permitting a collateral attack and in rendering its judgment in the quiet title action. Magnolia contends that the district court, in a tax foreclosure action, although generally a court of general jurisdiction, is for the purposes of such an action a court of limited jurisdiction, and that it is a condition that tax on its property be actually due and unpaid before the district court acquires any jurisdiction over the real estate sought to be sold. As we understand, Magnolia does not dispute the general principles relied on by the appellant and we shall not dwell thereon.

It may be observed first that it has been held repeatedly by this court that the whole matter of taxation, including the levy and collection of taxes, is statutory and does not exist apart from statute. (See, e. g., *Equitable Life Assurance Society v. Hobbs*, 155 Kan. 534, 127 P. 2d 477; and *Sherman County Comm'rs v. Alden*, 158 Kan. 487, 492, 148 P. 2d 509, and the cases cited therein.) The

present case presents no situation where that principle should not be adhered to, and we therefore examine the tax foreclosure statute as it existed in 1942 when the foreclosure in question was had, and the decisions of this court arising under former but like tax foreclosure statutes. Under such circumstances, it is not necessary that we discuss separately whether the jurisdiction of the district court is limited rather than general.

The opening sentence of the statute under which the tax foreclosure action was brought (G. S. 1941 Supp., 79-2801) reads:

"That in all cases in which real estate has been or shall be sold and bid in by the county at any delinquent tax sale and shall remain or shall have remained unredeemed for the period of three years . . . the board of county commissioners shall order the county attorney . . . to institute an action . . ."

Although the situation disclosed by the pleadings in the tax foreclosure action, and the agreed facts at the trial of the quiet-title action have been heretofore set forth, we here direct attention to the fact that the mineral deed to Magnolia was duly recorded (see G. S. 1935, 79-420), that its mineral interest was listed for taxation and that it paid all of the taxes assessed against that interest. The only conclusion that can be reached is that no tax ever having been in default, no tax lien could exist, the mineral interest could not have been lawfully sold and bid in by the county at any delinquent tax sale, and therefore the statutory condition to bringing the tax foreclosure action did not exist.

We are not concerned with differences as to specific procedures of the two acts, but the legislature by Laws 1877, ch. 39, provided for the sale of lands sold and bid in by the county for unpaid taxes. The opening sentence of that act read:

"That in all cases in which real estate has been or shall be sold and bid in by any city or county at any delinquent tax sale, and shall remain or shall have remained unredeemed and the certificate of sale untransferred for the period of three years after such sale, it shall be the duty of the attorney of such city or county to file a petition . . ."

No comment as to similarity of language is necessary.

Magnolia directs our attention to the four following cases:

In *Doty v. Bassett*, 44 Kan. 754, 26 Pac. 51, it appears that certain taxes were assessed against land in 1871 while it was still government land, and that it was sold to the county for the tax unlawfully assessed against it. The grantors of Doty acquired title and paid the taxes for 1872 and subsequent years. In 1877, an action

was brought under the provisions of the statute last above mentioned and a judgment was subsequently rendered. The land was bid in by the county and was sold to parties who conveyed to Bassett. Doty brought his action to quiet his title. From a judgment for Bassett, Doty appealed. This court held the proceeding was one in rem; that a tax, when duly levied, became a lien which might be enforced as the legislature prescribed; that the real estate was government or public land and not subject to assessment or taxation in 1871; that as the land was not taxable in 1871 and had not been sold or bid in by the county for any delinquent taxes, the statute had no application and the district court had no jurisdiction to condemn or sell the land, and that where lands are not taxable there are no taxes due and unpaid. It was further stated the alleged tax of 1871 was not merely voidable, but absolutely void, and there being no delinquent tax, the district court had no jurisdiction.

In *Spicer v. Wheeler*, 53 Kan. 424, 36 Pac. 736, which arose out of a sale held under the statute of 1877, the rule of the Doty case, *supra,* is referred to but the decision of the court is not based on that rule, but on a rule first made in the Doty case, and later withdrawn. The case was decided on the question of the sufficiency of the pleadings in the tax foreclosure action, and is not helpful on the question now before us.

In *Wyandotte County v. Kerr*, 112 Kan. 463, 211 Pac. 128, the question was the sufficiency of pleading to open a judgment rendered on publication service in a tax foreclosure action. We are not now interested in that particular question, but in that case it was said:

"Probably the only defenses that can be set up in an action to foreclose tax liens held by a county are that the property was not subject to taxation; that the taxes, or some part of them, were illegal; or that the taxes had been paid." (l. c. 464.)

In *Montgomery County v. Wilmot*, 114 Kan. 819, 221 Pac. 276, the court considered an appeal from an order setting aside a judgment and a sheriff's deed based thereon in a tax foreclosure suit. In that case the action was commenced and service by publication was had upon Arra Ballard, who owned real estate on which the tax had not been paid. A judgment was rendered and subsequently the property was sold and a sheriff's deed issued and recorded. After the judgment, but before the sale, the mother of Arra Ballard paid the county treasurer a certain amount and received a redemption but we need not review that. In about fifteen months, and within time

under the then applicable statute, Arra Ballard, a minor, by her next friend, filed her application in the original action to open the judgment. The attack being in time the court had no occasion to discuss the specific question of whether the trial court was without jurisdiction, but in affirming a judgment of the trial court allowing relief, it was said:

"Perhaps it is not stating it too broadly to say that one of the fundamental prerequisites to a valid sale of real property for taxes is that there is a tax due and unpaid at the time of the sale. Not only is this prerequisite essential to fair dealing between a sovereign and its citizens, but it is either specifically or necessarily by implication embodied in every provision for the sale of real property for taxes. In this case, whether we treat the evidence as showing a substantial compliance with the statute relating to redemption in a suit to foreclose a tax lien, which we do, or a proper redemption by a minor, which seems clear, though this question has not been argued, the fact remains that the sovereign had its tax in full twenty days before it attempted to sell the property. At the time of the sale the sovereign had no charge or claim against the property for taxes and therefore had nothing to sell. Though it went through the form of a sale it sold nothing and hence conveyed nothing." (l. c. 824.)

In addition to what was said in the above cases, attention is directed to cases holding that compliance with tax statutes is essential to the acquisition of jurisdiction. See *Morris County Comm'rs v. Cunningham,* 153 Kan. 340, 110 P. 2d 783; *Bryner v. Fernetti,* 141 Kan. 446, 41 P. 2d 712; *Madigan v. Smith,* 137 Kan. 269, 20 P. 2d 825; *Crawford County Comm'rs v. Radley,* 134 Kan. 704, 8 P. 2d 386; and see, also, 61 C. J. 1120, 1121, and 51 Am. Jur. 896, as bearing on the question last discussed.

We conclude that the tax on Magnolia's mineral interest having been paid in due time, it could not have been sold for delinquent taxes and bid in by the county, and therefore in any tax foreclosure action that may have been filed, the court did not and could not acquire any jurisdiction of the particular real estate, and that any judgment respecting that real estate, including an order of sale, approval of sale or issuance of a sheriff's deed was void.

Such a holding however does not warrant an unqualified affirmance of the trial court's judgment in the quiet-title action. It not only quieted title of Magnolia to its mineral interest, but as shown above, included certain contract rights included in the mineral deed to Magnolia. As is shown more specifically by the quotation heretofore made, Magnolia acquired the undivided one-half interest in the minerals and, under the provisions of G. S. 1935, 79-420,

that interest so conveyed was assessed for taxation, and it is that tax which Magnolia paid. For present purposes we may assume that a right of ingress and egress was so much an appurtenant to the estate conveyed that it may be said to be part thereof, and therefore included in the assessment for taxation of the real estate. But the right to use the surface for storage, refining and milling of minerals found, to manufacture any produce therefrom, to conduct operations, erect structures, lay pipe lines, and other things provided, were rights creating easements on the real estate not conveyed to Magnolia, and that they were not taxed is too clear for argument. It may be difficult to classify that portion of the mineral deed giving Magnolia the right to operate for minerals and deal or contract with respect thereto, including the leasing thereof as fully to all intents and purposes as if Magnolia were the absolute owner of the entire title and estate, but it cannot be said it did not create some interest of Magnolia in the real estate in addition to the undivided one-half of the minerals conveyed. None of these additional rights were separately returned for taxation and the tax paid by Magnolia. On the contrary, the tax assessed on the real estate, as distinguished from the tax on the mineral interest, included not only the land itself but the tenements and hereditaments and all rights thereto and interest therein, legal as well as equitable (G. S. 1935, 77-201, *Eighth*). It is conceded that the taxes assessed against the real estate, excepting the mineral interest, were not paid; that they were adjudged delinquent and unpaid; that the real estate was ordered sold, was sold, the sale confirmed and a sheriff's deed issued to the purchaser, the appellant herein. The proceedings in the tax foreclosure action, except as to Magnolia's mineral interest, are not attacked in any way.

It is not necessary that we treat the well-established rule that a judgment rendered in one action may not be collaterally attacked in another action, except on jurisdictional grounds. Such grounds do not exist as to the matter just discussed. The judgment of the trial court quieting Magnolia's title in "all other property and contract rights vested in plaintiff (Magnolia) by reason of the mineral deed . . ." was erroneous.

3. We note that in his brief Moyle makes some contention that Magnolia is barred by reason of the statute of limitations contained in the tax foreclosure statute (G. S. 1941 Supp., 79-2804b). In his

answer and cross petition Moyle did not plead any statute of limitations. The matter was not an issue in the trial court. Although if it had been, no error was specified on any claimed ruling and the matter is not before us for consideration.

4. The judgment of the trial court quieting Magnolia's title to its mineral interest in the involved real estate is affirmed and its judgment quieting its title to the other property and contract rights by reason of the mineral deed recorded in Book F, Misc., page 370, in the office of the register of deeds of Stevens county, is reversed.

HOCH, J. (concurring): The importance of this decision, as I view it, impels me to make brief comment, in addition to what is said in the opinion and in which I fully concur. In affirming the judgment of the trial court as to the plaintiff's real estate interest, the court passes upon two questions. We hold, first: That where there is no tax delinquency and therefore no tax lien to be foreclosed, a foreclosure judgment is void for want of jurisdiction of the subject matter; second, that the question of whether the action to quiet title was barred by the statute of limitations was not raised below nor passed upon by the trial court and is therefore not here for determination. The question of applicability of the statute of limitations not being here, the court does not determine the question of whether the statute was intended to apply to *void* judgments and I shall not discuss that question. Nor shall I discuss further the court's conclusion that the foreclosure judgment was void, my reasons for supporting that conclusion having been heretofore more fully stated. But I feel that it is well to examine the record a little further on the question of whether applicability of the statute of limitations is here for review. In his answer the defendant pleaded that "any claims of plaintiff to any interest in said real estate were adjudicated in such proceeding (tax foreclosure), such adjudication having now become final." This is a wholly insufficient basis upon which to say that the statute of limitations was pleaded in defense or that the question was put in issue in the trial court. The pleading makes no reference to the statue of limitations. It is well established that statutes of limitation are matters for affirmative defense, must be pleaded, and unless pleaded they are considered as waived (*Keehn v. Stapleton*, 161 Kan. 476, 169 P. 2d 811, and cases there cited, and many others that might be cited). It is true that we have held that a statute of limitations may be invoked under a general demurrer pro-

vided the pleading at which the demurrer is leveled shows clearly that the cause of action is barred. In this case there was no demurrer so there is no basis for even considering the question of whether the pleaded facts so show.

Furthermore, the case also falls within the general rule that questions not presented for determination in the trial court will not be considered upon review. (For long line of cases down to very recent ones, see 2 West's Kan. Digest, Appeal and Error, Key Nos. 169, 173.) The record does not show, nor is any contention now made, that the question of the statute was presented for determination by the trial court. Again, no reference is made to the statute of limitations in the specifications of error.

Finally, the appellant himself does not even now present in his brief a question of applicability of the statute of limitations except upon the theory that the foreclosure sale was *voidable* only. On the contrary, he says in his brief: "The only defense available to appellee (through typographical error called appellant) *is that the former decree is void,* and that there is no basis for such defense." On this record it is clear that the applicability of the statute of limitations is not here for determination and especially so as to a judgment void from its inception.

SMITH, WEDELL and BURCH, JJ., join in the above concurring opinion.

HARVEY, C. J. (dissenting): I dissent from the majority opinion and from the concurring opinion of Mr. Justice Hoch. The holding that the court *had no jurisdiction of the minerals in place,* described in the instrument under which Magnolia claims, *but did have jurisdiction of the same instrument to bar the surface rights* provided for in the same instrument is a *non sequitur,* as contrary to sound reason as it is to law. Surely, if judgment in the tax foreclosure case had been in favor of Magnolia neither that company nor any party to the action would have contended that the court had no jurisdiction to render the judgment. Jurisdiction of a court does not depend upon which of the parties received the favorable judgment.

Upon the question of the court's jurisdiction in the tax foreclosure case, I concur in the dissenting opinion of Mr. Justice Thiele and in the analysis made therein of the cases relied upon to sustain the majority opinion, and will say no more on that point.

My dissent is directed to the holding in the majority opinion and in the concurring opinion of Mr. Justice Hoch that the right of plaintiff to maintain this action, in view of G. S. 1941 Supp., 79-2804b, was a matter not at issue in the trial court and hence should not be treated here. The statute in question reads:

"Legal or equitable actions or proceedings may be brought to open, vacate, modify or set aside any judgment rendered for taxes, interest and costs or any order of sale made under the provisions of section 19 [79-2803] hereof, or any sale made under the provisions of section 20 [79-2804] hereof but every such action or proceeding, including those brought on the grounds and in the manner prescribed by the code of civil procedure, must be commenced within six months after the date of the sale of the real estate, which was affected. by such judgment, order of sale or sale, was confirmed by the court. The provisions of this section shall apply to all judgments, orders of sale, and sales whether the purchaser at the foreclosure sale be the county or an individual."

This was a part of the statute pertaining to tax foreclosure cases by a county, fixing a procedure different from that provided in the code of civil procedure, and fixed a limited time for bringing a suit of the character before us. This limitation of time became a condition precedent to bringing the suit. In short, it is the duty of the plaintiff in such an action to show either in his petition or date of its filing that this condition has been fulfilled. In this case the abstract shows that the petition was filed March 21, 1944. The petition sought to quiet plaintiff's title, hence was an equitable action or proceeding and comes within the above statute. It is true the petition does not allege that plaintiff was in possession of the property, the title of which was sought to be quieted, as provided by G. S. 1935, 60-1801, nor did it attempt to allege defendant's title, or what was defective about it, if anything. But we pass the effect of those omissions. Defendant in his answer alleged he was the owner of all of the quarter section of land "free and clear of any and all claims of plaintiff"; that he was in possession of the real property; that his ownership is based upon a sheriff's deed dated October 8, 1942, and duly recorded October 15, 1942, and described the tax foreclosure proceedings which led up to the execution of the deed, and alleged:

"That by reason of the premises, the plaintiff has waived and become estopped from claiming any rights in said real estate which it might have at any time had; that any such claims could and should have been made in said tax foreclosure suit and proceedings, and any claims of plaintiff to any interest in said real estate were adjudicated in such proceeding, such adjudication having now become final."

In its reply plaintiff, among other things, alleged:

"Plaintiff admits that defendant is the grantee of the sheriff's deed recorded in Book F-2, page 230, in the office of the Register of Deeds of Stevens County, Kansas, and said sheriff's deed was issued pursuant to proceedings in the district court of Stevens county, Kansas, entitled *Board of County Commissioners of Stevens County v. Marian E. Joslin Andrews, et al.*, being case No. 3345, but specifically denies that said proceeding or said sheriff's deed in any way affected the one-half interest in the minerals or other property and contract rights so owned and held by plaintiff and conveyed to it by said mineral deed."

In its reply plaintiff further alleged that no service of summons was made upon Magnolia in the tax foreclosure case except notice by publication of summons in the newspaper. The principal question raised by Magnolia in its reply was the question of proper service of summons. The pleadings clearly demonstrate that this action was not filed until almost a year and six months after the tax deed to defendant was recorded. The record clearly shows on its face that the action was not brought within the time authorized by statute and that by reason thereof Magnolia "has waived and become estopped" from claiming any interest in the property. That appeared in the pleadings in the trial court, just as it does here.

We pause to inquire: What more could defendant have done to raise the question of plaintiff's right to relief in this action? The concurring opinion of Mr. Justice Hoch makes it clear that the majority of the court regard G. S. 1941 Supp., 79-2804b, as a statute of limitations. This view is erroneous. A statute of limitations affords a personal right to a defendant. He may, if the facts warrant, take advantage of it, or he may not. There are people who decline to take advantage of a statute of limitations just as there are people who decline to go into bankruptcy although overwhelmed with debt, and people who will sell or mortgage their homestead in order to pay their debts. The statute here in question is not of that kind. It is a statute pertaining to tax matters which furnishes its own procedure (see *Sherman County Comm'rs v. Alden*, 158 Kan. 487, 492, 148 P. 2d 509, and authorities there cited) and grants the party who wishes to question the regularity or validity of the tax foreclosure proceedings a limited time in which to bring an action for that purpose; hence it is not governed by the general rule applicable to statutes of limitation. It goes to the right to maintain the action as distinct from procedure therein. This is clearly pointed out by the general authorities.

In 34 Am. Jur. 16, the rule is thus stated:

"A statute of limitations should be differentiated from conditions which are annexed to a right of action created by statute. A statute which in itself creates a new liability, gives an action to enforce it unknown to the common law, and fixes the time within which that action may be commenced, is not a statute of limitations. It is a statute of creation, and the commencement of the action within the time it fixes is an indispensable condition of the liability and of the action which it permits. The time element is an inherent element of the right so created, and the limitation of the remedy is a limitation of the right. Such a provision will control, no matter in what form the action is brought. The statute is an offer of an action on condition that it be commenced within the specified time. If the offer is not accepted in the only way in which it can be accepted, by a commencement of the action within the specified time, the action and the right of action no longer exist, and the defendant is exempt from liability. . . ." (Citing, among other cases, *Courtney v. Staudenmayer,* 56 Kan. 392, 43 Pac. 758, and *Rodman v. Missouri P. R. Co.,* 65 Kan. 645, 70 Pac. 642.)

To the same effect see 37 C. J. 686 and the many cases collected by the annotator in 77 A. L. R. 1050.

Our own decisions are in harmony with the rule stated in the general authorities. Perhaps we have had more occasion to apply it in the statute providing for recovery of damages for wrongful death, a cause of action unknown to the common law.

The rule is well stated in 25 C. J. S. 1158, as follows:

"Provisions in death statutes fixing the time within which suit must be brought are usually considered to be conditions on the right of action, and ordinary rules affecting the operation of general statutes of limitation are inapplicable unless made applicable by the statute. It is otherwise in the case of provisions considered as pure statutes of limitation." (Citing *Bowles v. Portelance,* 145 Kan. 940, 67 P. 2d 419, and other cases.)

Others of our cases to the same effect are cited in the Bowles case (p. 941), to which may be added *Hamilton v. H. & St. J. Rld. Co.,* 39 Kan. 56, 18 Pac. 57.

I think the only proper judgment for this court to render in this case is to reverse the judgment of the court below with directions to dismiss the action.

THIELE and PARKER, JJ., concur in the above dissenting opinion.

THIELE, J. (dissenting): I dissent from the fourth paragraph of the syllabus and the corresponding part of the opinion. As I view the matter, by reason of the allegations of the petition in the tax foreclosure action, the district court acquired jurisdiction over the real estate owned by Magnolia, and its proceedings thereon being

regular, its judgment was not void and was not subject to collateral attack. In my opinion our decision reported in 160 Kan. 722, 165 P. 2d 419, made a correct disposition of the appeal.

Before discussing any decisions cited in the court's opinion, or commenting on decisions not there cited, I direct attention to the statute in effect during 1942 providing for tax foreclosure actions, being G. S. 1941 Supp., ch. 79, art. 28. References hereafter are to the chapter and section number of that statute.

Under 79-2801, it is provided, "That in all cases in which real estate has been or shall be sold and bid in by the county at any delinquent tax sale" the board of county commissioners shall order the county attorney to institute an action "against the owners or supposed owners of such real estate and all persons having or claiming to have any interest therein or thereto," and that the petition shall state the amount of the taxes chargeable to each tract of real estate and the name of "the owner, supposed owner, and party having or claiming to have any interest therein or thereto," giving the date of sale for delinquent taxes, together with a prayer that the court shall determine the amount of taxes, charges, interest and penalties chargeable to each tract and the name of the owner or party having an interest therein, etc., as provided in that section, which further provides for service of summons as provided by the code of civil procedure. Under 79-2803, it is provided, "Issues may be joined in said action as in other civil actions," and on trial it shall be the duty of the district court "to investigate and decide what taxes shall have been legally assessed and charged on such tract, lot, or piece of real estate, and to render judgment therefor, together with the interest, charges and penalty thereon" and to order the sale of the same for the payment of such taxes, charges, interest and penalty, the sale to be made as later provided.

The later provision is 79-2804, which provides for the issuance of an order of sale to the sheriff, and that the sheriff publish notice of sale and on the day fixed the sheriff shall offer for sale each tract separately and sell the same to the highest and best bidder, and that after sale he shall make return of the order of sale, which return shall be examined by the court, and if found regular, the sale shall be confirmed and the sheriff ordered to forthwith execute to the purchasers at such sale a good and sufficient deed; that no particular form of deed shall be required but it shall be sufficient if it shows the date of the sale, a description of the property conveyed, the

amount for which each tract sold, the name of the purchaser, the · date the sale was confirmed by the court and the title of the suit in which the tax lien was foreclosed. Under 79-2804, it is further provided:

"When said deed is filed for record in the office of the register of deeds of the county where such real estate is situate, it shall vest in the purchaser or grantee therein named, as against all persons, parties to such proceedings, a fee simple title thereto; and said deed shall be prima facie evidence of the regularity of all proceedings prior to the date of filing the same for record as aforesaid."

It may here be observed that Magnolia makes no claim that the above procedure was not fully and completely followed, save and except its claim as to service of summons on it, a claim not allowed in the court's opinion. The sale was properly advertised and held, a return made, the sale confirmed, and a sheriff's deed issued to Moyle, which he promptly recorded. Why did he not get the fee simple title which the statute says he should have? The court says because Magnolia could show in another action that it had paid its taxes and if they were paid, the district court had no jurisdiction and its judgment was void. At no time and in no action or proceeding in which Stevens county was a party, did Magnolia ever make such an assertion. In an independent action in which Stevens county was not a party, Magnolia collaterally attacks the judgment in the tax foreclosure action, and the parties to that action, not Stevens county, stipulate that although the district court in the foreclosure action found it had not paid, yet in fact it had paid. In my opinion, whether it had paid or not was the issue between Stevens county and Magnolia in the tax foreclosure action. That statute provides for the bringing of actions to determine that very fact, issues may be joined and the court is commanded to "investigate and decide what taxes shall have been legally assessed and charged," and to render judgment. It is not even contended the district court did not fully perform its duties under that statute.

Let us first examine the decisions mentioned in the court's opinion. The first case is *Doty v. Bassett*, 44 Kan. 754, 26 Pac. 51. The general facts of that case are set forth in the court's opinion and will not be repeated. A reference to the decision will disclose that originally an opinion had been prepared by a commissioner holding that the petition in a tax foreclosure action did not state facts sufficient to vest the trial court with jurisdiction, for the reason the petition did not ·describe the real estate involved. That decision

was reported in 24 Pac. 944, but was not printed in our reports. A rehearing was allowed, and following that a per curiam opinion was filed. In that opinion, the sufficiency of the petition was not treated. Although the opinion noted that the real estate involved was government land and not subject to taxation, and that the purchaser at the sale was the county, which was the plaintiff in the tax foreclosure action, there was no comment on the question of the effect of federal statutes controlling the matter, or the knowledge of the purchaser that the land which it sold and purchased was not subject to taxation. In the opinion it is recited that the trial court's judgment was reversed solely upon the ground that the land at the time could not be assessed for taxation, as it was not subject to taxation, and therefore the tax foreclosure statute did not apply because that act related to collection of delinquent taxes on real estate.

It may here be noted that although the tax foreclosure statute in force when the above case was decided (Laws 1877, ch. 39), did contain some similar language to that in the act in force when Magnolia's interest was sold, it did not contain the present provisions for trial of an action. On the contrary, that act provided for the filing of a petition giving the name of the supposed owner of the real estate and for a publication notice setting a date for showing cause why the real estate should not be sold at a judicial sale. There were no specific provisions for sale such as are contained in the act in force when Magnolia was foreclosed. On the contrary, the deed was executed by the chairman of the board of county commissioners. There was no provision that the deed should convey a fee simple title as against all parties to the action and there was no statutory provision as to opening or vacating proceedings such as is contained in the act under consideration in this case.

The decision in Doty v. Bassett, supra, has never been followed. According to Shepard's Kansas Citations the decision has been cited but once, and then in Spicer v. Wheeler, 53 Kan. 424, 36 Pac. 736, and there the decision was not based upon the opinion as printed in our reports, but upon the conclusions reached in the opinion prepared by the commissioner which was superseded by the printed decision. As I read the decision in Doty v. Bassett, taking into consideration the statutes then in force and those in force in 1942, that decision is no authority for holding that in an action where the real estate involved is subject to taxation a judgment may be held void because in a collateral attack it may be found that a fact deter-

mined in the tax foreclosure action (whether tax was unpaid) was not true.

I shall not comment at length on *Wyandotte County v. Kerr,* 112 Kan. 463, 211 Pac. 128, for the question of void judgment was not in that case. The quotation in the court's opinion, however, is to the effect that the fact taxes allegedly unpaid had been paid, is a matter of defense in the tax foreclosure action.

In the court's opinion a considerable quotation is made from *Montgomery County v. Wilmot,* 114 Kan. 819, 221 Pac. 276. In that case there was a direct and not a collateral attack on the judgment in a tax foreclosure action, and in accordance with statutory provisions. To isolate certain language, such as is quoted, does not truly reflect the decision. More to the point is a concluding paragraph of the opinion, reciting:

"It is not our purpose in this decision to pass upon the good faith of a purchaser at tax foreclosure sale in all the aspects in which that question might arise nor any further than is necessary for the proper determination of this case. *What we do hold is that, under the facts as disclosed by the evidence in this case, the sale and conveyance were at least so far voidable that they should be set aside upon timely application.*" (l. c. 825.) (Emphasis supplied.)

And the court's judgment as reflected in the syllabus was in accord. The court did not hold the judgment void, on the contrary, the extent of its decision was that under the evidence the sale was voidable. The decision is no authority for holding void the judgment in the tax foreclosure case under consideration.

In my opinion, we decided the principle of jurisdiction over real estate in a tax foreclosure case in *Moore v. Graham,* 151 Kan. 193, 98 P. 2d 111. Reference is made to the opinion for a rather extended statement of the facts, but in a general way it may be said the action was one to quiet title brought by a former owner against one who purchased real estate at a tax-foreclosure sale, predicated on unpaid taxes for the years 1927 to 1931 inclusive. Plaintiff contended that she had paid all taxes except for 1931. The defendant purchaser pleaded the proceedings in the tax-foreclosure action, and that plaintiff had not made timely effort to have the judgment and sale set aside. In disposing of plaintiff's attack on the tax-foreclosure judgment, this court said:

"At the outset, plaintiff realizes that this is a collateral attack on a judgment and that she has the burden of overturning the judgment in the tax foreclosure action and that in order to accomplish this she must establish that the judgment in that case was void. She points out that the delinquent taxes

prior to 1931 had been paid on July 26, 1932, the lot was bid in by the county on the first Tuesday in September, 1932, and the action to foreclose the tax lien was filed October 19, 1935; that G. S. 1935, 79-2801, provides for the foreclosure of tax liens in cases of this sort. The part of that statute with which we are interested is as follows:

" 'That in all cases in which real estate has been or shall be sold and bid in by the county at any delinquent tax sale, and shall remain or shall have remained unredeemed and the certificate of sale untransferred for the period of three and one-fourth years after such sale, or any extension thereof as provided in sections 1 (79-2326) and 2 (79-2401) hereof, it shall be the duty of the county attorney of such county, when so ordered by the board of county commissioners, to institute an action in the district court in the name of the board of county commissioners, against the owners or supposed owners of such real estate, or so much thereof as the commissioners may direct.'

"It will be noted that this statute provides that the action to foreclose a tax lien cannot be commenced until the land in question shall have remained unredeemed from sale to the county for three and one-fourth years. *In this case three and one-fourth years had not elapsed since the lot was bid in for the 1931 taxes before the action to foreclose the tax lien was filed. She argues from this that the trial court did not have jurisdiction of the subject matter of the action, and hence the judgment was void. The district court had jurisdiction of the subject matter of foreclosure of tax liens. There can be no doubt about that. The matter which plaintiff argues made the judgment void could have been raised by answer. The mere fact that there was a fact which had it been pleaded would have been a defense to the action does not take away from the court jurisdiction of the subject matter. The subject matter of the action was the foreclosure of tax liens and the trial court had jurisdiction of this at all times.*" (l. c. 197.)   (Emphasis supplied.)

Under the statute, the time in which the action could be commenced was just as vital to the district court's jurisdiction as was the fact there were taxes unpaid. I think that where a petition in a tax foreclosure action alleges that taxes are unpaid and that the real estate has been sold and bid in at a delinquent tax sale, a question of fact is alleged, and if the owner claims that no tax is unpaid, it is a matter of defense which should be pleaded to be available, and that it may subsequently be shown in an action between other parties that there was no tax actually unpaid no more robbed the district court of jurisdiction than did the fact the action was commenced before the statutory time was fully expired.

What has been said above is confined to the proposition of collateral attack on mere showing that the statements in a petition in a tax foreclosure action and the judgment rendered thereon are void because the statement as to tax being unpaid is not true. But that does not fully dispose of the instant case. As is shown in the

court's opinion, when Magnolia received its deed to one-half of the mineral interest, it also received title to certain interests in the fee. The court says that it was in court, and that it not having paid the tax on its interest in the fee, that interest was cut off by the judgment, sale and deed in the tax foreclosure action. I think the division of what Magnolia acquired under its deed is not warranted under any rule for construction of a contract. There was a single consideration for everything conveyed. As a part of its conveyance Magnolia not only had a right to certain surface rights in the fee, but it received a power of appointment enabling it to develop the entire mineral interest, to lease the same as though it were the owner of all and not merely one-half of it. Under the opinion, and I think correctly, it was held the district court had jurisdiction insofar as Magnolia's interest in the fee was concerned, but it seems to me irrefutable that if it was in court for that purpose and the district court had jurisdiction, then Magnolia was in court for all purposes and to the full extent of its interest in both the minerals and in the fee, and that it ought not to be said that it could ignore defending the mineral interest and later collaterally attack the proceedings had insofar as the mineral interest is concerned.

In my opinion the court's decision will introduce an element of confusion into our jurisprudence and unsettle every title growing out of a tax foreclosure action. Every title examiner will pause whenever a title is based upon a deed in a tax foreclosure proceedings, which the statute states shall convey a fee simple title. No matter how regular the proceedings may be on their face, no matter that the record may disclose unpaid taxes, the examiner of the title will know that under the court's decision, a former owner or his grantee may, in a collateral proceedings, attack the validity of the deed in the tax-foreclosure action by the simple device of alleging that the delinquent tax for which the real estate was sold had in fact been paid. No longer will the statutory definition that the deed shall convey a fee simple title mean what it says. Another effect will be to make prospective purchasers reluctant to bid any considerable sums for tracts offered for sale by the sheriff as the result of proceedings and judgments in tax foreclosure actions. The court's opinion warns such prospective purchasers that instead of receiving a deed conveying a fee simple title, they may be purchasing prospective lawsuits. The law should be construed if pos-

sible—and I believe it is possible—so that real estate will sell for substantial amounts and for enough not only to pay the tax lien, but to leave something for the owner.

In my opinion the pleadings, judgment, and specifications of error were sufficient to raise the question of the effect of G. S. 1941 Supp., 79-2804b, referred to in the court's opinion as a statute of limitations, and that it should have been considered and determined.

I am of the opinion that the judgment of the trial court quieting Magnolia's title should have been wholly reversed.

HARVEY, C. J., and PARKER, J., concur in the above dissenting opinion.

BURCH, J. (dissenting in part): I am unable to agree with the last half of syllabus 5 and the corresponding part of the opinion. The incidental surface rights referréd to therein were acquired by and included in the instrument which conveyed the mineral interest. They were integral parts thereof which contributed to the value of the interest when it was assessed for tax purposes. They do not differ in character from the right of ingress and egress. A so-called royalty interest in minerals never has any value unless the surface rights are affected in some manner. Certain surface rights are more vital to the royalty development than to the use of the general surface rights and make the royalty interest workable, valuable and saleable. When they are acquired for a valuable consideration they should not be forfeited because of the default of another if the owner thereof has listed them properly for taxation. Moreover, the purchaser of the tax title has record notice thereof when he acquires the remaining surface and mineral rights. The result reached in the opinion is impractical and casts a burden upon the royalty owner which the legislature did not intend.