Mo. River, Fort Scott & Gulf Rld. Co. v. D. F. Shepard.

| | |
|---|---|
| 9 | 647 |
| 41 | 687 |
| 9 | 647 |
| 44 | 176 |
| 9 | 647 |
| 48 | 666 |

1. CONDEMNATION PROCEEDINGS; *Profile and Map.* The map, profile, and notice required by §§ 48 and 49 of ch. 23 of the General Statutes need not be filed or given, prior to the commencement of proceedings for condemning the right of way under article nine of said chapter.

2. ———— *Notice; Sufficiency.* The notice authorized by § 86 of said ch. 23 is sufficient, even though no map, profile, or notice has been filed or given as required by §§ 48 and 49 of said act.

*Error from Bourbon District Court.*

SHEPARD sued the *Railroad Company* to recover damages for certain alleged trespasses committed at divers times between July 1st, 1869, and the commencement of this suit, February 6th, 1871. The petition alleges, that before and at the time of the commission of the trespasses the plaintiff was the owner and in possession of certain lots in the city of Fort Scott; that on July 1st, 1869, and on divers other days after that day and before the commencement of the suit, the defendant, forcibly and unlawfully entered upon said land,

built an embankment, laid thereon their railroad, and operated the same; that prior to the committing of the trespasses, the plaintiff had erected on a portion of said land a flouring mill, costing $16,000, and had intended to use the other of said lots to build cattle and stock yards and pens upon; that defendant, by building its road and operating the same over plaintiff's premises, had disconnected the mill from the other lots; that defendant did not enter upon said lands as a corporation under the laws of the state. Judgment was demanded for $5,000. The defendant answered, 1st, a general denial; 2d, a justification under certain condemnation proceedings, had by virtue of the provisions of article 9, ch. 23, of Gen. Stat.; 3d, license. The cause was tried at the June Term 1871. The district court held that the condemnation proceedings were not in conformity with the requirements of the statute, and instructed the jury that they were absolutely void, and offered no defense to the acts complained of. The principal objections made to the record of the condemnation proceedings were that it did not show that the *Railroad Co.* filed in the office of the county clerk a map and profile of the route (required by § 48, ch. 23, Gen. Stat.,) before proceeding to condemn lands, and that it did not show that the company gave written notice to the occupants of the land over which the route of said road was designated (required by § 49, of same chapter,) before commencing said proceedings. Verdict and judgment in favor of *Shepard*, for $1,500, and the *Railroad Company* brings the case here on error.

*Wallace Pratt*, and *C. W. Blair*, for plaintiff in error:

1. The record of the condemnation proceedings was in exact conformity with the provisions of art. 9, ch. 23, Gen. Stat., and was a complete justification by the defendant of the acts complained of, from the time of the payment, by the Railroad Company to the county treasurer of the amount of damages awarded by the commissioners, to-wit, July 26th, 1869. Sections 48 and 49 of said ch. 23 were never intended by the legislature as a part of the proceedings, on the part

of railway corporations, to condemn lands for the purpose of their right of way, nor can any such construction reasonably be given to them. Article 9 of said chapter, entitled "Appropriation of lands for the use of railway and other corporations," is complete in itself, making all necessary constitutional requirements concerning giving notice to all persons interested of the proposed action of the county commissioners. Sections 48 and 49 are in another article, and constitute no part of the requirements to acquire the right of way by condemnation. We assume that the same notice, that the constitution would require to be given to a party in any other judicial tribunal, would be equally valid in these special proceedings to acquire lands for the right of way for railways. Cooley's Const. Lim., 563. Will it be claimed that the legislature has not the constitutional power to provide a constructive, for an actual personal service, in all actions instituted in the courts of this state *against residents of the state?* See § 64 of the civil code. The service, by leaving a summons at the residence of a party, is but a constructive one, and by the terms of the statute is a good and valid service in all cases. Is this provision unconstitutional? Had the legislature provided that such service might be made by publication in all cases, as it is now provided when defendants are not residents of the state, would this not be equally a constructive notice, and one within the constitutional power of the legislature to provide that it should be equivalent to actual personal service? 18 N. Y., 199–214; 21 Ind., 321; 17 Iowa, 261. But the proceeding to condemn lands is not one in which a judgment *in personam* is sought against the owner of the land, but is purely *in rem*, seeking only to affect the land itself. In these cases the legislature have the undoubted power to direct the mode and manner of giving notice to the owners of the land. 15 Wend., 374; 18 N. Y., 199.

2. Said §§ 48 and 49 are no part of the condemnation proceedings required by the statute, for the further reason that by their terms they expressly refer to a period of time subse-

quent to the laying off the route by the county commissioners, and limited only to the commencement of the *construction* of the road. The "map and profile" refer to the route already "laid off" pursuant to the provisions of art. 9. And the "notice" to be given to actual occupants is that the company are about to commence actual construction upon the route designated in the map and profile.

*McComas & McKeighan,* for defendant in error:

1. The plaintiff in error claims that the "record of the condemnatory proceedings was in exact conformity with the provisions of article 9, ch. 23, Gen. Stat., and a complete justification by the defendant of acts complained of." This is the principal point in dispute in this case.

The power of eminent domain is an inherent attribute of sovereignty. When the legislature delegates this power to a railroad corporation, it must be exercised in the mode and manner prescribed by the act of the legislature. 1 Redf. Rlys., 269, § 10; Baldw., C. C., 205; Const. of Kas., art. 7, § 5. After the legislature has delegated to a corporation the power to take private property for its "use," the fixing, or ascertaining what "compensation" "the owner" shall have, is a judicial question, and he is entitled to notice. Not necessarily a written notice, or a notice by publication, but "*notice*"— and not a thing that is addressed to no person, that fixes no time or place for the commissioners to meet, and has not a single characteristic of the legal idea of a notice. Cooley's Const. Lim., 563; 8 Wis., 381; 27 Mo., 373.

It is admitted that plaintiff in error did not comply with §§ 48, 49, ch. 23, and as excuse for not so doing, says these sections are no part of the condemnation proceedings. Perhaps not; but what are they in the statute for? Two things must be done by the railroad corporation: it must exercise the delegated power of eminent domain in the manner pointed out by the statute, and it must make compensation to the owner according to the constitution. These two sections of the statute prescribe conditions precedent to the exercise of

this power at all by the corporation; and it is so much the worse for them that they are not in the condemnation proceedings, because they must take the first step before the second—before they "apply" to the board of county commissioners. Sec. 81 of said ch. 23 provides that the railroad. "may apply," etc., but *before* it can do so it must comply with the conditions that the legislature has affixed to its right to exercise the power of eminent domain. The commissioners shall proceed to lay off "a route." They shall lay off a strip of ground one hundred feet wide. This is the *route*. Where? Along the line of such proposed railroad, "as located by such company." How are the commissioners to do this, unless the map of the road required by § 48 has been filed? They could not do it at all. Section 81 further provides, that when it shall be necessary for the purpose of cuttings and embankments, the commissioners shall lay off the "*route*" more than one hundred feet wide. We submit that without the *profile* of the road, it would be simply an impossibility for the commissioners to perform this duty. And the same may be said about side-tracks, depot grounds, etc. The engineers of the road must have furnished this map and profile to the commissioners, and with these documents in their possession, which no person but themselves could see, they went forth as a migratory, itinerant, peripatetic commission, to assess the damage to land along the line of this road, "*where the same is now*, or may be (sometime in the far-off future) hereafter located." All the acts to be done by these commissioners point to this map and profile.

Either this law requires the company to file this map and profile before application is made to the board of county commissioners, so that the notice mentioned in § 86 can in some manner describe the land to be taken, or the law is unconstitutional, because it provides for no notice.

The opinion of the court was delivered by

BREWER, J.: The principal question in this case is as to the validity of certain proceedings for the condemnation of

the right of way through the real estate of defendant in error. The proceedings were had under art. 9 of ch. 23 of the Gen. Stat., pages 212, 213. It is not claimed that the proceedings were not in conformity to the provisions of this article, but it is insisted that under §§ 48 and 49 of the same chapter, p. 203, certain things must be done before any application can be made under art. 9; or, if this be not so, then that art. 9 is unconstitutional, as failing to provide for notice to the owners of lands sought to be taken. The proposition is thus clearly and forcibly presented by the learned counsel for defendant in error:

"Either this law requires the company to file this map and profile before application is made to the board of county commissioners, so that the notice mentioned in section 86 can in some manner describe the land to be taken, or the law is unconstitutional, because it provides for no notice."

Let us examine the first branch of this dilemma. Sections 48 and 49 are as follows:

"SEC. 48. Every railway corporation, before constructing any part of their road into or through any county named in their charter, shall make a map and profile of the route intended to be adopted by such company, in such county, which shall be certified by the president and engineer of the company, or a majority of the directors, and filed in the office of the county clerk of the county into or through which the road is to be made.

"SEC. 49. The company shall give written notice to all actual occupants of the land over which the route of the road is so designated, and which has not been purchased by or donated to the corporation."

In must be borne in mind that the question is not, *whether* these sections are obligatory, but *when* they are obligatory. It is conceded on both sides that they are law, and that their requirements must be respected by all railroad companies. The only question is, do these requirements antedate the condemnation proceedings? It is a question of construction and intention, and not one of power. When must the map and profile be filed? Sec. 48 answers the question: "Before constructing any part of the road." If filed before

construction commences, the clear letter of the law is obeyed. The legislature have fixed the time. Who can change it? It is a matter entirely within legislative control, and beyond judicial determination. When is the construction of a road commenced? The term has no technical meaning. What is its ordinary acceptation? It refers to the labor put forth to fit and adapt a certain selected route to the running of cars. Constructing is building. Building a road — constructing a road. This certainly does not include buying the ground on which to build and to construct it. Buying a piece of ground is not part of constructing a house. It may be an essential prerequisite, but is not a part of it. Much work has to be done before the construction of the road commences. A company must be organized, stock subscribed, a survey made, route selected, and the right of way obtained, before the construction proper commences. The term might as well be enlarged so as to include all these, as simply the one of obtaining the right of way. It would have been just as easy, if so intended, to have said "before condemning the right of way," as "before constructing the road." It seems to us, therefore, that the plain language of § 48 disposes of one branch of this dilemma. But there are other considerations, worthy of notice, which sustain this view. Art. 9 is entitled, "Appropriation of lands for the use of railway and other corporations," and is complete in itself. If the legislature had intended the filing of this map and profile to be a portion of the condemnation proceedings, it seems as though they would have inserted the requirement somewhere in this article, and not have placed it, where it is, in an article declaring certain general powers and duties of railroad corporations. Still again: Art. 9 is a substantial re-enactment of ch. 124, Laws 1864, p. 236, which continued in force until 1868. Sections 48 and 49 were first introduced into the statutes in 1868. Now, as the legislature manifestly deemed the provisions of law in force from 1864 to 1868 sufficient for condemning the right of way, if they had decided to alter or add to those provisions, would they

not naturally have made such change or addition in the very chapter or article which purported to include those provisions? It may be said, that, except as preliminary to the application for condemnation of the right of way, the filing of a map and profile would be of little value. Possibly this may be so. It was deemed entirely unnecessary for four years. If so, it would not justify us in giving to the section a meaning its language did not authorize. Perhaps its value may seem greater when it is noticed that no map or profile is called for by article nine. That article is satisfied by a written report, giving metes and bounds, without any map or profile whatever. Again: Sec. 49 provides for giving written notice to all actual occupants of lands not purchased or donated. Notice of what? The statute does not answer. Counsel says, notice of the condemnation proceedings. Why not, more probably, notice that the company is about to commence work, that the actual occupant may prepare his fences so as to confine his stock, and preserve his crops? No notice is necessary or required where the company owns the land; but where it has only a right of way, an easement on the land, and where the original owner has the right to occupy till the actual use for railroad purposes is sought, notice is proper and required. The conclusion then to which we have come, is, that the filing of the map and profile is not made by the statute preliminary to the condemnation proceedings. This conclusion has been reached with much hesitation, and grave doubts; but it seems to us most fully to carry out the intention of the legislature. This brings us to a consideration of the other branch of the dilemma. Is the law unconstitutional, because providing for no notice? If the law was silent as to notice, and an attempt was made by it to divest one of his property without any pretense of notice, its unconstitutionality would be undisputed. A man cannot be deprived of his property without due process of law. This process of law implies notice; not necessarily actual, personal notice, but notice, such that there is a reasonable probability of the party's receiving it. The

rule is thus laid down by Denio, J., in the *Matter of the Empire City Bank*, 18 N. Y., 199: "It may be admitted that a statute which should authorize any debt or damages to be adjudged against a person upon a purely *ex parte* proceeding, without a pretense of notice, or any provision for defending, would be a violation of the constitution, and be void; but where the legislature has prescribed a notice by which it is reasonably probable that the party proceeded against will be apprised of what is going on against him, and an opportunity is afforded him to defend, I am of opinion that the courts have not the power to pronounce the proceeding illegal. The legislature has uniformly acted upon that understanding of the constitution." Article 9 is not obnoxious to the charge of attempting to divest property without notice. It attempts to provide for notice. It requires notice, gives opportunity to be heard, and defend, and right of appeal from the decision of the commissioners to the district court. The real objection therefore is, that the notice provided for is insufficient. Sec. 86 of this article reads, that "before any board of county commissioners shall proceed to lay off any railroad route, as herein provided, notice of the time when the same shall be commenced shall be given by publication, thirty days before the time fixed, in some newspaper published in such county," etc. This does not contemplate personal notice. Nor is this essential. As we understand the learned counsel for defendant in error, they concede this. The statutes are full of instances of constructive notice, as in cases of publication against nonresidents, in attachment suits, foreclosures of mortgages, etc.; or in cases of changes in the valuation of real estate by the boards of equalization; or in the matter of street improvements in cities, or opening roads in the country. See in reference to the validity of constructive notices, generally, the cases of *Mason v. Messenger*, 17 Iowa, 261; *Beard v. Beard*, 21 Ind., 321, and the case from 18 N. Y., just cited.

But it is insisted that unless the map and profile are filed before the notice is given, no owner can tell whether his land

is to be taken, or whether he is one of the parties affected by the notice. The notice, therefore, it is claimed, is so indefinite as to be void. The legislature has provided for this notice. Whether we think a fuller and more specific one ought to be provided, or not, we must sustain this unless it conflicts with the constitution and is void. The line of the road must be located before application is made for a condemnation of the right of way. See § 81. The filing of the map and profile only makes more public what has been already previously done; though it may be noticed here, that the location of the line does not involve the making of a profile. It is enough that the general course of the road through the county is indicated and settled. Now, the location of the line of a railroad is not a thing hid under a bushel, or done in a corner. It is a matter of public notoriety. True, oftentimes several surveys are made, and lines run, but all of them are of public knowledge. The charter names the termini, and the counties through which it is intended to run the road. Sec. 7, p. 192, Gen. Stat. There is, as a matter of fact, and one of those facts of such general knowledge that courts may take judicial notice of it, in each county a public knowledge of the general course of a proposed railroad through such county. True, the exact quarter-section, or town lot, to be traversed, may not be known. But it is reasonably probable that persons to be affected by the assessment will be notified by the publication; fully as probable as in other cases of constructive notice. This thing also should be noticed: The very fact of laying out a railroad carries with it the idea of some discretion to be exercised upon actual survey of the ground. This is true of railroads, as well as highways. When viewers lay out a county road, they are not limited to a fixed, definite line. The general course is indicated by the petition and order; but within that general course they have a large discretion as to the exact line. Sec. 4, p. 898, Gen. Stat. Was it ever held that this vitiated the notice, or made void the survey and location? So is it with a railroad. A change may be almost necessary. The interests of the public may

be benefited. A slight change may work a large saving in the cost of the right of way, or the expense of construction. These are matters which cannot always be foreseen. They doubtless arrested the attention of the legislature, and influenced the legislation. They cannot be ignored by any one who considers the objects to be attained, and the means to be used. Perhaps this legislation is not as full as it ought to be. Perhaps other safeguards should be thrown around the property of the citizen. Be that as it may—and it is a question for the law-makers—we cannot pronounce this legislation void. The case of the *Owners of Ground, etc., v. Mayor of Albany,* 15 Wend., 374, is, so far as the indefiniteness of the notice is concerned, similar to this. A piece of ground was proposed to be condemned as a site for a public square. An extract from the opinion of Savage, C. J., will present the case: "It is alleged that the proceedings are unconstitutional because no notice was given to Richard D. Betts, who was assessed $41.20 as the owner of ground benefited. It is admitted that no personal notice was served on Mr. Betts, nor any notice, except a general notice published in the newspaper printed by the state printer, that a certain piece of ground, describing it, was required for a public square, and that on a certain day and place, at a mayor's court, to be held, etc., the damages which the owners would be entitled to would be inquired into and assessed, and that the amount of such damages would be *apportioned and assessed upon the owners of houses and lots which would be benefited,* in proportion to the advantages which such owners should be deemed to acquire. This notice is the precise notice which the statute prescribes; and although it may be admitted that property cannot regularly be taken, or assessments made, which shall be obligatory *without notice* to the owner, yet it cannot be denied that it is competent for the legislature to say *what notice* shall be *sufficient.*" In this case, though the ground to be taken was described, yet the land alleged to be benefited, and upon which the damages were assessed, was not. Still the notice was held good. It seems to us, therefore, that the notice authorized by § 86 is

42

sufficient, even though no map or profile had been filed in the office of the county clerk.

There are other questions of alleged error presented by counsel for plaintiff in error, but we deem it unnecessary to consider them. The notice as published was to the owners of lands along the line of the road "as the same is now or may be located." A suggestion is made in the brief as to the effect of the words, "or may be." We have not chosen to examine that question, for the real estate of defendant in error may have been on the line as then already located; in which case he could hardly complain. At least, we shall wait for further facts before deciding that he could take any advantage of this. The judgment of the district court will therefore be reversed, and the case remanded for a new trial.

All the Justices concurring.