MARCEL DUPHORNE, *Appellant,* v. M. L. MOORE, *Appellee.*

No. 16,425.

SYLLABUS BY THE COURT.

1. JUDGMENTS—*Validity—Publication Service—Willfully False Affidavit.* A judgment based upon a willfully false affidavit for service by publication is not absolutely void.

2. ——— *Vacation—Fraud—Limitation of Action.* An action to set aside a judgment because it is based upon such an affidavit is one for relief on the ground of fraud, and is required to be brought within two years after the actual or constructive discovery thereof.

3. ——— *Record of Fraudulent Judgment is Notice to a Purchaser.* One who purchases land while the records of the

district court of the county in which it is situated show a judgment annulling the title of the grantor, which is fair on its face but in fact voidable because based on a willfully false affidavit for service by publication, must be deemed to have notice from that time of the perpetration of the fraud.

Appeal from Kearny district court; WILLIAM H. THOMPSON, judge. Opinion filed March 12, 1910. Affirmed.

*J. G. Campbell,* and *Ray Campbell,* for the appellant.

*R. L. Holmes,* and *Charles G. Yankey,* for the appellee.

The opinion of the court was delivered by

MASON, J.: The Walton Loan Company, a Kansas corporation, owned a tract of land in Kearny county. C. H. Puckett, having a tax deed thereto, brought an action in that county to quiet title, making service upon the company by publication, in virtue of an affidavit stating that its officers had departed from the state and could not be found. Judgment was rendered on June 23, 1903, as prayed in the petition. On June 24, 1905, the company executed a deed for the land to Marcel Duphorne. On March 20, 1908, Duphorne began an action in Kearny county against M. L. Moore, who had acquired the interest of Puckett, asking relief against the judgment on the ground that the affidavit for service by publication was not only false, but was made fraudulently and in bad faith. A demurrer to his petition was sustained, and he prosecutes error.

In *Davis v. Land Co.,* 76 Kan. 27, where it was held that a judgment resting upon publication summons could not be vacated on motion after five years merely upon a showing that the affidavit on which it was based was untrue in fact, a distinction was suggested between the situation there presented and that arising where the affidavit was willfully false. The distinction is manifestly sound. (See *Dunlap v. Steere,* 92

Cal. 344, and the cases cited in a note thereto in 16 L. R. A. 361.) But even a judgment based upon perjured testimony that the defendant can not be personally served is not an absolute nullity. Its condition is not the same as though there had been no service whatever. The false affidavit challenges the attention of the court. The court in effect makes a finding of fact upon the strength of it, and acts upon such finding in rendering judgment. Whatever remedies the defendant may have to redress the wrong done him, he can not safely ignore the record made against him. It binds him until corrected in some proper and timely proceeding.

"Every judgment, whether obtained through fraud or not, is valid and binding and conclusive as to all parties thereto, and their privies, until reversed, vacated, set aside, or perpetually enjoined by some proceeding instituted directly for that purpose. . . . A judgment that merely ought to be nullified is still a judgment." (*Simpson v. Kimberlin,* 12 Kan. 579, 588, 589.)

(See, also, the discussion in *McCormick v. McCormick,* ante, p. 31, and the cases there cited.)

It follows from the principle stated that Duphorne could not maintain an action to quiet his title to the land by removing a cloud cast thereon by the Puckett judgment. He was not entitled to a decree declaring that there had never been such a judgment. All he could rightfully ask was that the judgment should be annulled because it had been procured by imposition practiced upon the court. Viewed in that aspect, his action was one for relief on the ground of fraud and was required to be brought within two years after its discovery. (Civ. Code, § 18, subdiv. 3; Gen. Stat. 1901, § 4446, subdiv. 3.) For the purpose of setting the statute of limitation in operation the fraud is deemed to be discovered whenever it is discoverable by the exercise of the diligence reasonably to be expected of one in the

position of the person defrauded, under all the circumstances. (25 Cyc. 1186; 19 A. & E. Encycl. of L. 251.) The existence of a public record showing facts disclosing a fraud, the perpetrator of which sustains no fiduciary relation to the victim, is deemed to impute knowledge thereof to anyone who in the exercise of reasonable care for his own protection would be led to examine it. (25 Cyc. 1190; 19 A. & E. Encycl. of L. 251.)

"The language employed in the statute, 'until discovery of the fraud,' does not mean until the party complaining had actual knowledge of the fraud alleged to have been committed, but that constructive notice of the fraud is sufficient to set the statute in motion, even though there is no actual notice; that where the means of discovery lie in public records required by law to be kept, involving the very transaction in hand, and the interests of the parties to the litigation, the public records themselves are sufficient notice of the fraud to set the statute in motion." (*Black v. Black,* 64 Kan. 689, 704.)

"Constructive discovery resulting merely from a statute, under such circumstances that the aggrieved person, although actually diligent, has no reasonable opportunity to learn of the facts constituting the fraud, may not be sufficient to set the statute in operation, but constructive discovery resulting from his failure to be diligent when diligence would have disclosed the fraud practiced upon him will always do so." (*Donaldson v. Jacobitz,* 67 Kan. 244, 247.)

Perhaps the Walton Loan Company, if it had continued to own the land in ignorance of the judgment for more than two years, might have maintained such an action as the present, for, however public the record may have been, no especial occasion arose for its inspection until a change of title took place. But when Duphorne became a purchaser reasonable diligence certainly required him to search such records of the county as affected titles to real estate, including those of the district court. Such an examination would have

revealed the judgment annulling his grantor's title. Knowing of this he must necessarily know either that he was taking nothing by his deed or that the judgment, though fair on its face, had been fraudulently obtained. With such knowledge he must be supposed to have regarded his own title as good and the judgment as invalid. Notice of the record was therefore tantamount to notice of the fraud. By failing to act within two years after being affected with such notice he lost his right to the remedy here invoked.

The judgment is affirmed.