## No. 23,517.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF NESS, *Appellant*, v. J. C. HOPPER and THE NESS CITY MILL, LIGHT & ICE COMPANY, *Appellees*.

### SYLLABUS BY THE COURT.

1. TAXATION—*Taxes in Default—Foreclosure of Tax Lien—Title Holder Not Liable for Deficiency in Amount Realized from Sale—Removal of Improvements.* In the absence of statute, there is no personal liability on the title holder of real property for any deficiency in the amount realized from the sale of such property under tax foreclosure proceedings, although such deficiency may have been caused in whole or in part by the removal of improvements from the property while the county's lien for unpaid taxes existed thereon.

2. SAME—*Subject of Taxes Wholly Statutory.* The entire subject of taxation is statutory; the method prescribed for the recovery of delinquent taxes is statutory, and it does not exist apart from the statute.

Appeal from Ness district court; ROSCOE WILSON, judge. Opinion filed February 11, 1922. Affirmed.

*Richard J. Hopkins,* attorney-general, and *A. W. Wilson,* county attorney, for the appellant.

*E. T. Foote,* of Hutchinson, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This novel action seeks to charge the defendant owners of certain town lots with a personal judgment for damages for the removal of improvements therefrom, which caused a deficiency in the amount realized on the sale of the lots under tax foreclosure proceedings.

Prior to 1911 the Ness City Mill, Light & Ice Company owned the town lots in question. On these lots was a mill of considerable value, equipped with engines, boilers, machinery, etc. The mill was partially destroyed by fire on June 21, 1911. The defendant Hopper,

president of the milling company, took over the property on an agreement to pay certain debts of the corporation. Hopper junked the damaged property; he sold the boiler for $200, the machinery for $200, other material for $300, removed the well casing, and took away about $200 worth of stone from the walls and foundations. It is agreed that all this stuff had to be removed ere the mill could have been rebuilt, and that the mill machinery was valuable only as junk.

The taxes on the lots for the years 1911 to 1917 inclusive, totaling $555.63, were not paid, and the county brought an action against Hopper and the milling company to foreclose its tax lien. Judgment *in rem* was entered in favor of the county, and the lots were sold by order of the court for $50. The costs of the action were $17.76, leaving the net sum of $32.24 to apply on the seven years' taxes chargeable on the property. ·

Thereafter, and on the theory that because Hopper had severed from the realty the partially destroyed equipment, well casing, stones, etc., he had damaged the property, and had therefore diminished its value as security for the satisfaction of the county's lien for taxes, this action was begun. The facts were all developed by the pleadings and an agreed statement of facts, and the trial court gave judgment in favor of the defendants.

The county board appeals, seeking to fasten liability on Hopper by applying to this situation the rule of personal liability which prevails in some jurisdictions where an insolvent mortgagor or one holding under him commits waste to such an extent as to reduce the value of the mortgaged premises so that it is insufficient to satisfy the lien of the mortgagee. (*Lavenson v. Standard Soap Co.*, 80 Cal. 245, 13 A. S. R. 147, and note; *Delano v. Smith*, 206 Mass. 365, 30 L. R. A., n. s., 474.)

It is argued for the county that although there is no statute covering this subject the principle involved in the statutes relating to the disposition of personal property without the payment of taxes can be invoked to help perfect a liability on defendant in this case. In short, by a plausible course of reasoning, the county board argues that this court, by principles of analogy and deduction, should declare the law to be what the legislature itself could declare, but what the legislature has not yet declared—that where the owner of property willfully damages the realty by removal of improvements there-

from, he is personally liable in damages to the county if the realty thus damaged will not sell for enough to pay the county's lien for taxes. It can hardly be said that the want of legislation on this subject arises through mere oversight. More likely, it arises through studied restraint. Having the matter of loss of taxes and evasion of taxes in mind, and having legislated repeatedly touching the making away with personal property without payment of the taxes thereon, the legislature must have had its eyes open to the fact that taxes on real estate are occasionally lost or rendered uncollectible by the destruction or removal of improvements from the freehold. So frequently have owners of real estate removed improvements therefrom without paying the accrued and delinquent taxes that it cannot be said that the legislature has never considered the subject. As early as 1889 the removal of improvements from mortgaged property to the prejudice of the mortgagee had become sufficiently grave to justify the fixing of statutory liabilities, both civil and criminal, for such misdeeds. (Gen. Stat. 1915, §§ 6479-6481.) The whole matter of taxation is statutory; the means for the recovery of delinquent taxes is prescribed by statute, and does not exist apart from the statute.

Whatever the abstract merit of the county's contention, it is one which should be addressed to the legislature and not to the judiciary. The judgment of the trial court was correct.

This conclusion renders it unnecessary to determine the interesting point raised by the appellee—the statute of limitations. (Civ. Code, § 17, subdiv. 3.) But see *Osawatomie v. Miami County,* 78 Kan. 270, 96 Pac. 670; *Johnson v. Llano County,* 15 Tex. Civ. App. 421; 17 R. C. L. 973.

Affirmed.