No. 39,952

THE PHILLIPS PETROLEUM COMPANY, a Corporation, *Appellee*, v. (LILLY MOORE, et al.), IVA P. DOBBS and the BOARD OF COUNTY COMMISSIONERS OF SHERIDAN COUNTY, KANSAS, *Appellants*.

(297 P. 2d 183)

Opinion filed May 5, 1956.

*Alex M. Fromme*, of Hoxie, argued the cause, and *Joseph W. Fromme*, County Attorney, of Hoxie, was with him on the briefs for the appellants.

*Earl Hatcher*, of Topeka, argued the cause, and *D. A. Hindman* and *Stanley Krysl*, both of Stockton, and *Rayburn L. Foster, Harry D. Turner, Robert B. Burgess* and *James G. Williams, Jr.*, all of Bartlesville, Oklahoma, were with him on the briefs for the appellee.

The opinion of the court was delivered by

FATZER, J.: This appeal is from an order overruling defendants' demurrers to plaintiff's petition seeking to cancel and set aside a sheriff's deed issued November 16, 1943, and to quiet plaintiff's title to certain mineral interests in Sheridan County. The principal matter in controversy was the force and effect of a judgment, sale, and sheriff's deed in a previous tax foreclosure action authorized by G. S. 1941 Supp. 79-2801, *et seq.*, then in force and effect, covering the real estate.

The record discloses the following: On December 18, 1942, the board of county commissioners of Sheridan County instituted a tax foreclosure action in the district court of Sheridan County entitled "Board of County Commissioners of Sheridan County v. Albert H. Acre et al.," case No. 3700 (*Sheridan County Comm'rs v. Acre*, 160 Kan. 278, 160 P. 2d 250), to foreclose tax liens on mineral interests in several hundred tracts of land including the mineral interests of plaintiff (hereinafter referred to as Phillips) involved in this proceeding. Personal service of summons was not had upon Phillips. Thereafter, and upon the affidavit of the county attorney, service by publication was obtained on Phillips, which was approved by the district court. On September 16, 1943, no appearance having

been made by Phillips, the district court, upon due consideration, rendered judgment for the plaintiff foreclosing its tax lien upon the property in question. On September 27, 1943, the district court issued an order for the sale of the real estate. Notice of the sale was given, and at the sheriff's sale held on November 10, 1943, the real estate was sold to Lilly Moore. The sale was confirmed, and under date of November 16, 1943, a sheriff's deed to the real estate was executed and delivered to Lilly Moore. The deed was filed in the office of the register of deeds on November 22, 1943, and recorded in book 97, page 602. Thereafter Lilly Moore conveyed the real estate to Iva P. Dobbs.

On February 23, 1954, the action out of which this appeal arises was commenced by Phillips filing a petition in which certain parties, including Iva P. Dobbs and the board of county commissioners of Sheridan County, appellants here (hereinafter referred to as defendants) were made defendants. The petition alleged Phillips was a Delaware corporation with an operating office in Bartlesville, Oklahoma, and was authorized to do business in Kansas as a foreign corporation; that on May 31, 1935, the then owner of real estate executed and delivered to it a deed to an undivided one-half mineral interest in and under the Southeast Quarter (SE ¼) Sec. six (6) Township eight (8) South, Range thirty (30) West, Sheridan County, which was filed for record December 8, 1935; that since that date Sheridan County had duly assessed and levied taxes against its real estate, which it promptly paid, for each year including 1942 and that no taxes were delinquent on December 18, 1942, the date the foreclosure action was filed; that it was the owner of the legal and equitable title to and in the quiet and peaceful possession of an undivided one-half interest in and to all the oil, gas and other minerals in and under the real estate described; that defendants claimed some right, interest or title therein, with other allegations pertinent to a quiet title action; that the official records of Sheridan County reflected its correct address on December 18, 1942; that it had, at all times since its admission to do business in Kansas, maintained a duly registered agent upon whom process might be served; that personal service of summons could at all times have been obtained upon its registered agent or upon the Secretary of State as provided by law; that the affidavit of the county attorney to obtain service by publication knowingly and falsely stated that personal service of summons could not be had

upon it; that no process or service of summons had been made upon it except by publication; that it had no actual notice of the tax foreclosure action until June 12, 1952, and that, by the exercise of reasonable diligence, it did not discover the fraud of defendants until sometime thereafter.

Phillips further alleged that the judgment entered in cause No. 3700 on September 16, 1943, and all proceedings taken thereunder were void for three reasons: (1) There were no taxes due and unpaid on the real estate described at the time the tax foreclosure action was instituted and the mineral interests foreclosed, and the district court did not acquire jurisdiction of the real estate; (2) the affidavit for service by publication knowingly and falsely alleged that personal service could not be had upon Phillips, and the district court did not acquire jurisdiction over Phillips by reason of such fraud; and (3) service by publication upon Phillips was unauthorized since it maintained a registered office in Kansas and had a registered agent upon whom personal service could be had, including personal service of summons upon the Secretary of State; that if the manner of service of summons by publication was authorized by statute, the statute was unconstitutional and void as denying due process of law since a reasonable method of notification calculated to give knowledge of the proceedings as required by the constitution of the United States, was not required or given. The prayer was that the defendants be required to set up their claim; that Phillips be declared the owner in fee simple of the real estate described; that the defendants be barred, and that Phillips' title be quieted.

Before discussing the questions here presented, we direct attention to the statute in effect during 1942 when the tax foreclosure action was filed, which is G. S. 1941 Supp., Ch. 79, Art. 28. References are to the chapter and article of that statute except as are expressly noted. We pause to say this chapter and article have since been amended in several respects.

Defendents' specification of error is that the trial court erred when it overruled their demurrers. We note here both parties contend in the district court and in this court that the issues involved were: (1) Does G. S. 1949, 79-2804b (Laws 1949, Ch. 478, § 1) preclude jurisdiction of the district court in the action to vacate and set aside the sheriff's tax deed and to quiet title? (2) Is the action barred by

G. S. 1949, 60-304, *First?* In view of the conclusions hereinafter reached, no further comment will be made concerning them.

As preliminary, we note Phillips did not attach copies of any of the proceedings had in cause No. 3700, including those complained about with respect to service by publication. It is not alleged that any of the proceedings had in cause No. 3700 were defective, irregular or void, except as noted, and no dispute exists as to the legality of any of the tax foreclosures proceedings. Unless the proceedings and the judgment rendered thereunder may be collaterally attacked by Phillips it may not maintain the present action. Three questions are presented: (1) Was Phillips properly served with summons in cause No. 3700? (2) If it was, does our procedure for service by publication, as applied in cause No. 3700, deny due process of law in that it fails to provide a reasonable method calculated to give knowledge of the proceedings? And (3) did the district court have jurisdiction of the cause No. 3700 insofar as Phillips was concerned?

1. Was Phillips properly served with summons in cause No. 3700? If the summons was fatally defective, the judgment against it was open to the collateral attack. Two essentials to a valid judgment are that the court have jurisdiction of the subject matter, and of the parties whose rights are to be adjudicated (*McFadden v. McFadden,* 174 Kan. 533, 538, 257 P. 2d 146).

The tax foreclosure statute (79-2801) then in force and effect, provided for service of process either personally or by publication, as provided in other cases under the Code of Civil Procedure. In the event service is made by publication, the notice, in addition to the requirements prescribed by the Code, shall contain a description of the real estate. Our statute G. S. 1949, 60-2525, provides for service by publication, as follows:

. . . . . . . . . . . . . .

"In actions brought against a . . . foreign corporation having in this state property . . . sought to be taken by any of the provisional remedies. . . .

". . . which relate to or the subject of which is real or personal property in this state, where any defendant has or claims a lien or interest, actual or contingent, therein, or the relief demanded consists wholly or partially in excluding him from any interest therein, . . .

". . . wherein the plaintiff upon diligent inquiry is unable to ascertain whether a corporation, domestic or foreign, named as a defendant, continues to have legal existence or not, . . . or cannot ascertain whether a corporation has been dissolved or not, . . ."

An affidavit for service by publication was made by the county attorney as authorized by G. S. 1949, 60-2526. A publication of summons was made pursuant to G. S. 1949, 60-2527. No complaint is made as to the form or sufficiency of either. The complaint is the district court approved the publication of summons because the county attorney knowingly and falsely stated personal service of summons could not be had. It is not alleged that an appeal was taken from the judgment in the tax foreclosure action, nor that the judgment, including approval of service by publication, was directly attacked.

Phillips' contention might be proper if addressed to the district court in a timely proceeding to vacate and set aside the default tax foreclosure judgment and the service by publication (G. S. 1949, 60-2530, 79-2804b), but it cannot here collaterally attack either the affidavit for service by publication or the publication summons. We have held that an affidavit for service by publication filed as provided by G. S. 1949, 60-2526, followed by publication of a notice of summons in accordance with G. S. 1949, 60-2527, which are, on examination, approved by the district court as required by G. S. 1949, 60-2528, confer jurisdiction upon the court to hear and determine all issues in the action in which such service is made (*Ogden v. Walters,* 12 Kan. 282, 294; *Larimer v. Knoyle,* 43 Kan. 338, 347, 23 Pac. 487; *Miller v. Miller,* 89 Kan. 151, 130 Pac. 681; *Training School v. White,* 110 Kan. 498, 204 Pac. 688; *Martens v. Green,* 113 Kan. 142, 144, 213 Pac. 642, and *Potts v. West,* 124 Kan. 815, 817, 262 Pac. 569) and a judgment rendered therein is valid and unimpeachable, unless assailed for cause within the time prescribed by law, even though the affidavit for service by publication was willfully false and the defendant ignorant of the pendency of the action, and made no appearance therein (*Davis v. Land Co.* 76 Kan. 27, 30, 90 Pac. 766; *Duphorne v. Moore,* 82 Kan. 159, 161, 162, 107 Pac. 791; *Gooden v. Lewis,* 101 Kan. 482, 485, 167 Pac. 1133, and *Marler v. Mortgage Co.* 111 Kan. 488, 493, 207 Pac. 823). Neither the affidavit for service by publication, nor the publication of summons can be collaterally attacked in the present proceedings, and the time to directly attack them has long since expired (G. S. 1949, 60-2530; 79-2804b).

In *Magnolia Petroleum Co. v. Moyle,* 162 Kan. 133, 175 P. 2d 133, the precise point under consideration here was examined, and the court held:

"Where the record discloses that the affidavit for service of summons by publication alleged that it was not known whether a corporation was legally existing or dissolved and that plaintiff, with due diligence was unable to procure actual service of summons within the state, the corporation may not collaterally attack the service of process by showing that it was a foreign corporation duly authorized to do business within the state and that it had filed an irrevocable consent that service of summons might be served upon it under the provisions of G. S. 1935, 17-501." (Syl. ¶ 2.)

Another reason exists why Phillips' contention cannot be sustained. It is G. S. 1949, 60-3133, which reads:

"That any judgment of any court of record in this state which has been entered of record and existing without having been attacked or set aside for a period of ten years or more, and which is defective or invalid by reason of publication service, is hereby validated, and shall be given the same force and effect as though such publication service had been originally valid and binding."

For informative purposes, we point out that since July 1, 1947, service by publication upon any person, fiduciary or corporation shall be of no force or effect where an appointment of a service agent has been made and filed with the clerk of the district court in any county in conformity with G. S. 1949, 60-2533, *et seq.*

2. Does our procedure for service by publication, as applied in cause No. 3700, deny due process of law in that it fails to provide a reasonable method calculated to give knowledge of the proceedings? Phillips' contention here is that it appointed a registered agent as required by G. S. 1941 Supp. 17-4401, *et seq.*, upon whom personal service of summons could be made, and in addition, had given its irrevocable consent to be sued in the proper courts of any county by service of process upon the Secretary of State pursuant to G. S. 1935, 17-501; that the board of county commissioners of Sheridan County could not lawfully obtain service by publication in the tax foreclosure action since personal service of summons could be made upon its registered agent or the Secretary of State, and to do otherwise denied it due process of law as the publication summons was not a reasonable method of notification calculated to give knowledge of the tax foreclosure proceedings.

A similar contention was made in *Magnolia Petroleum Co. v. Moyle,* supra, and we rejected it. Our statute, then and now effective, G. S. 1949, 17-510, provides:

"The method of obtaining service as in this act provided shall not be deemed to invalidate or prohibit any other method of obtaining service of process on any foreign corporation under any other provision of the statutes of the state of Kansas, but shall be deemed cumulative."

Our decisions are in accord with the statute. We have held that statutes providing for service against a foreign corporation by serving some designated person within the state or the Secretary of State are cumulative and supplemental to other methods of service, and are not exclusive. In *Freeman v. Keltner*, 175 Kan. 37, 48, 259 P. 2d 228, we said:

". . . It repeatedly has been held the various statutory methods for service on a foreign corporation are cumulative and a plaintiff may select any of them. (*Betterment Co. v. Reeves*, supra, p. 114; *Jones v. Insurance Co.*, 83 Kan. 44, 109 Pac. 1077; *Nowak v. Insurance Co.*, 103 Kan. 778, 779, 176 Pac. 654; *Magnolia Petroleum Co. v. Moyle*, 162 Kan. 133, 139, 175 P. 2d 133.) See, also, reference in last cited case to G. S. 1949, 60-2522."

The collection of taxes by a tax foreclosure action is a proceeding *in rem* (*Pritchard v. Madren*, 24 Kan. 486). The method of collection is not prescribed in the constitution but is left to the legislative discretion and control. In prescribing the remedy in 79-2801, *et seq.*, the legislature provided that summons should be personally served or publication made as provided in other cases under the Code. The legislature may adopt either or both methods of service of process so long as the method adopted is sufficient to make it reasonably probable that the party proceeded against would be appraised of what is going on, and given an opportunity to defend (*Gulf Railroad Co. v. Shepard*, 9 Kan. 647; *Fudge v. Fudge*, 23 Kan. 416; *Pritchard v. Madren*, supra, and 16 C. J. S. Constitutional Law, § 619, p. 1259).

In *Pritchard v. Madren*, supra, the court held:

"Where the statute expressly authorizes service by publication of notice to all parties interested in lands upon which tax liens are sought to be foreclosed, such service must be held sufficient to sustain the jurisdiction, although the owner be a resident of the county and not personally named in the notice, or otherwise served with process. (*Gulf Rld. Co. v. Shepard*, 9 Kan. 647; *Fudge v. Fudge*, 23 Kan. 416.)" (Syl. ¶ 5.)

In *Fudge v. Fudge*, supra, p. 419, we said:

". . . We had occasion to examine this question of notice in the case of the *Gulf R. R. Co. v. Shepard*, 9 Kan. 647, and we see no reason to depart from the views therein expressed. In that case we held, that where the legislature has provided for a notice by which it is reasonably probable that the party proceeded against will be appraised of what is going on against him, and an opportunity is afforded to defend, the courts have not the power to pronounce the proceeding illegal. . . ."

The constitutionality of statutes prescribing the method of collection of taxes, under which personal notice of the pendency of such

proceedings has not been given, has been challenged from time to time on the ground that they violate the due process clause of the federal Constitution. Such statutes have been uniformly sustained on the ground that the proceedings for the collection of taxes are *in rem*, and require no personal service of notice upon the owner or lienor of the land.

In *Winona & St. Peter Land Co. v. Minnesota*, 159 U. S. 526, 537, 538, 40 L. Ed. 247, 16 S. Ct. 83, Mr. Justice Brewer said:

". . . That the notice is not personal but by publication is not sufficient to vitiate it. Where, as here, the statute prescribes the court in which and the time at which the various steps in the collection proceedings shall be taken a notice by publication to all parties interested to appear and defend is suitable and one that sufficiently answers the demand of due process of law." (Citing cases.)

In *Leigh v. Green*, 193 U. S. 79, 48 L. Ed. 623, 24 S. Ct. 390, the Supreme Court of the United States, in effect, held: Due process of law is not denied the holder of a lien on real property by the lack of any provision for personal service on him of notice of the pendency of proceedings *in rem* to enforce the lien acquired by a purchaser of the property at a tax sale, which are authorized by the Nebraska statutes, where notice is given by publication to all persons interested in the property to appear and set up their claims. (L. Ed. headnote No. 2.)

In *Ballard v. Hunter*, 204 U. S. 241, 51 L. Ed. 461, 27 S. Ct. 261, it was, in effect, held: Due process of law does not require that the nonresident owners of lands within a levee district should have personal notice of the pendency of a suit to collect the levee taxes assessed upon their lands. (L. Ed. headnote No. 5.)

We hold neither the due process clause of the federal Constitution, nor section 2 of our Bill of Rights was violated when service by publication was obtained upon Phillips, and the notice given in the tax foreclosure action under 79-2801 and G. S. 1949, 60-2525, *et seq.*, was such as to be reasonably calculated to apprise Phillips of the pendency of the action and afford it an opportunity to defend.

3. Did the district court have jurisdiction of cause No. 3700 insofar as Phillips was concerned? Our approach to this question is governed by the recognized rule that the power of taxation is legislative in character (*Judd v. Driver*, 1 Kan. 455; *State, ex rel., v. State Commission of Revenue and Taxation*, 163 Kan. 240, 249, 181 P. 2d 532; *State, ex rel., v. Jackson County Board of Social Welfare*, 161 Kan. 672, 680, 171 P. 2d 651), and that all matters relating

to the levy, assessment and collection of taxes are statutory and do not exist apart from the statute. (Constitution, Art. 11, § 1; *Ness County v. Light and Ice Co.,* 110 Kan. 501, 204 Pac. 536; *Sarver v. Sarver Oil Co.,* 141 Kan. 246, 40 P. 2d 394; *State, ex rel., v. Smith,* 144 Kan. 570, 61 P. 2d 897; *Equitable Life Assurance Society v. Hobbs,* 155 Kan. 534, 127 P. 2d 477; *Sherman County Comm'rs v. Alden,* 158 Kan. 487, 492, 148 P. 2d 509; *Ray v. Board of County Comm'rs,* 173 Kan. 859, 252 P. 2d 899, and *Board of County Comm'rs v. Allen,* 175 Kan. 460, 463, 264 P. 2d 916.)

We have had occasion to consider this important question before. The first time was in January, 1946—the first Magnolia case (*Magnolia Petroleum Co. v. Moyle,* 160 Kan. 722, 165 P. 2d 419). We held that where a court has jurisdiction of the parties to an action and of the subject matter, and renders a judgment within its competency, the judgment is final and conclusive unless corrected or modified on appeal or by some other method as prescribed by statute, and that one claiming an interest in real estate, whose rights were adjudicated and cut off in a tax foreclosure action, may not, in an action to quiet his claimed title, collaterally attack the sufficiency of the judgment in the tax foreclosure action. A petition for rehearing was granted and the appeal was reargued. In December, 1946—in the second Magnolia case (*Magnolia Petroleum Co. v. Moyle,* 162 Kan. 133, 175 P. 2d 133) we concluded that a correct decision had not been made in the first opinion. We held that conditions precedent to the maintenance of a tax foreclosure action are that taxes lawfully assessed against real estate shall have been unpaid and the real estate involved must have been sold and bid in by the county at a delinquent tax sale, and unless those conditions exist the district court had no jurisdiction of the real estate, and any judgment ordering its sale was void. A second rehearing was granted and the appeal reargued—the third Magnolia case (*Maglonia Petroleum Co. v. Moyle,* 163 Kan. 368, 182 P. 2d 127). On July 12, 1947, the opinion on rehearing was adhered to.

The question was not re-examined until October, 1948, when it was considered for the fourth time—the first Shell case (*Shell Oil Co. v. Board of County Comm'rs,* 165 Kan. 642, 197 P. 2d 925). We held that Ch. 375 of the L. 1941 (79-2801, *et seq.*) refers only to real estate on which taxes are due and unpaid and applies to no other real estate; further, that in a tax foreclosure action the district court had power to determine the amount of taxes actually delin-

quent on real estate but was granted no jurisdiction or power to sell real estate and divest the owner of his title when the taxes thereon were fully paid.

The matter stood thus until May, 1951, when we considered the question the fifth time—the second Shell case (*Shell Oil Co. v. Board of County Comm'rs*, 171 Kan. 159, 231 P. 2d 220). This was an appeal from a finding and judgment that certain taxes on real estate were delinquent and the property subject to sale. We held that an action to vacate and set aside a judgment and all subsequent proceedings had in a tax foreclosure action, was governed by the provisions of 79-2801 to 2809, of which § 2804b is a part, and the action to vacate and set aside being commenced more than six months after the date of confirmation of the sale in the tax fore-closure, was brought too late.

The question stood *status quo* until November, 1951, when it was examined the sixth time—the third Shell case (*Shell Oil Co. v. Board of County Comm'rs*, 171 Kan. 595, 237 P. 2d 257). This was a rehearing of the second Shell case. We affirmed the second Shell opinion and held: In proceedings governed by the tax foreclosure act (79-2801 to 2809) every action, either legal or equitable, to open, vacate, modify or set aside any judgment rendered for taxes, or any order of sale or sale made thereunder, must be commenced within six months after the date of confirmation of sale.

In December, 1953, the question was considered the seventh time—the Allen case (*Board of County Comm'rs v. Allen*, 175 Kan. 460, 264 P. 2d 916). We held that a condition precedent to the maintenance of a tax foreclosure action is that taxes lawfully assessed against real estate shall have been unpaid, and that the tax foreclosure Act (G. S. 1949, 79-2801, *et seq.*) has no application to property upon which all taxes levied have been paid, and where no taxes on a given piece of real estate are delinquent, a court would acquire no jurisdiction over such property in a tax foreclosure action; the county would have nothing to sell, and therefore, nothing would be conveyed to the purchaser.

The matter stood thus when the present appeal was presented.

We have reviewed our former decisions because of the conflict which results from them. The effect of these holdings is to place tax foreclosure actions partly within and partly without the intent and purpose of 79-2801, *et seq.* A short summary of them indicates we have held that the question whether taxes were due and unpaid

on real estate can be re-examined in an independent action, which collaterally attacks the validity and finality of the tax foreclosure judgment where they had been determined not to have been paid, notwithstanding the time to institute actions or proceedings under 79-2804b to vacate, modify or set aside any judgment or sale had expired (*Magnolia Petroleum Co. v. Moyle,* 162 Kan. 133, 175 P. 2d 133, and second rehearing, 163 Kan. 368, 182 P. 2d 127; *Shell Oil Co. v. Board of County Comm'rs,* 165 Kan. 642, 197 P. 2d 925); that the legislature never intended county officials or district courts to have jurisdiction to divest a citizen of his title to real estate on which the taxes were fully paid. On the other hand, we held that the finding in a tax foreclosure action that taxes were delinquent, was binding and final, and the owner of real estate sold at a sheriff's tax sale had six months after the date of confirmation of the sale to institute an action to vacate and set aside the tax foreclosure judgment and subsequent proceedings; that if he did not do so within the time prescribed, his right of action was barred. (*Shell Oil Co. v. Board of County Comm'rs,* 171 Kan. 159, 231 P. 2d 220, and 171 Kan. 595, 237 P. 2d 257.)

We have given the statute effect under one circumstance, but have nullified it under another. Under one circumstance finality and conclusiveness results; under the other uncertainty and confusion exists. We have not permitted the legislative policy declared in the statute to fully operate. Regardless of what has been previously said, the statute was not intended to have two methods of application. It is one statute with one purpose. Without discussing each of its sections, suffice it to say the legislature intended it to be a complete and independent code for the collection of taxes levied and assessed upon real estate, having a separate and distinct judicial proceeding in which its own procedures and limitations are prescribed. Its provisions are specific and complete. It conferred upon district courts jurisdiction to hear and determine all issues of fact or law which might arise in its application. One of its purposes is to insure a prompt and just determination in a court of record of all issues pertaining to every person shown by the record to have any interest or title in real estate described in a petition pending before the court. Provision is made to obtain service of process upon all such persons. When summons has been served or service by publication properly made, what essentials of jurisdiction are lacking which prevent a district court from making a binding adjudication of the rights of all parties on all issues in-

volved in a tax foreclosure proceeding, including unpaid taxes? We think there is none.

We hold, under the statute, it is clearly intended that where the district court has jurisdiction of the parties to be affected, and a petition in a tax foreclosure action alleges taxes are unpaid and the real estate has been sold and bid in at a delinquent tax sale a question of fact is alleged, and, if the owner claims that no tax is unpaid, it is a matter of defense which should be pleaded to be available; that if such defense is not presented and the district court renders judgment for the amount of the taxes alleged to be unpaid, together with interest, charges and penalties against the real estate described, such judgment is final and conclusive unless corrected or modified on appeal, or by such other method as may be prescribed by statute, and it cannot be attacked collaterally otherwise. If the district court errs in determining there is tax unpaid, that fact does not deprive the district court of jurisdiction of the real estate.

We are in accord with the view that property should not be sold for taxes if taxes have been paid. The statute makes provision for the protection of the owner of real estate in such a case, in addition to conferring the right to appeal. The statute (79-2804b) fixes a definite time, six months (now twelve months) within which any proceeding may be brought to set aside a judgment. The legislature had authority to make such a limitation; its purpose was two-fold: First, to permit the owner of real estate to make application in the tax foreclosure action or by the institution of an independent legal or equitable action, to open, vacate, modify or set aside the judgment or sale to show, if he could, among other things, that the real estate was not subject to taxation or that the taxes had been paid; and second, that purchasers at tax foreclosure sales should know the limitation of time within which the judgment of the court upon which the sale was predicated, might be attacked.

Phillips' action was not instituted until some eleven years following the date of confirmation of the sale of the real estate to Lilly Moore.

79-2804b reads:

"Legal or equitable actions or proceedings may be brought to open, vacate, modify or set aside any judgment rendered for taxes, interest and costs or any order of sale made under the provisions of section 19 (79-2803) hereof, or any sale made under the provisions of section 20 (79-2804) hereof but every such action or proceeding, including those brought on the grounds and in the manner prescribed by the code of civil procedure, must be commenced within six

months after the date of the sale of the real estate, which was affected by such judgment, order of sale or sale; was confirmed by the court. The provisions of this section shall apply to all judgments, orders of sale, and sales whether the purchaser at the foreclosure sale be the county or an individual."

The purpose of this statute was well stated in the second Shell case (*Shell Oil Co. v. Board of County Comm'rs*, 171 Kan. 159, 231 P. 2d 220) where it was said:

"Under G. S. 1941 Supp. 79-2804b, every action, either legal or equitable, to open, vacate, modify or set aside any judgment rendered for taxes, or any order of sale made thereunder, including those actions brought on the grounds and in the manner prescribed by the code of civil procedure, must be commenced within six months after the date of confirmation of sale, and the provisions of this section apply to all judgments, orders of sale and sales, whether the purchaser be the county or an individual. We think the clear intention of the statute is to supersede any and all other provisions of the code insofar as they may relate to actions to vacate, modify or set aside judgments, orders of sale and sales in tax foreclosure proceedings. The statute fixes a definite time within which such an action may be brought. The legislature had authority to make such a limitation and there was a good purpose in its doing so, namely that purchasers at tax foreclosure sales would know a limitation of time within which the proceedings might be attacked. To hold otherwise would merely introduce confusion and unsettle every title growing out of a tax foreclosure action. Every title examiner would pause when confronted with a title derived from tax foreclosure proceedings, notwithstanding the statute (G. S. 1941 Supp. 79-2804) states the deed shall convey a fee simple title. Purchasers at tax foreclosure sales could never be certain whether they were purchasing fee simple titles or prospective lawsuits. We think the legislature clearly intended to remove after the passage of the time prescribed by the statute, the uncertainty which has been conceded by everyone to exist with reference to tax titles.

"In passing, we note that the statute under consideration as it now appears (G. S. 1949, 79-2804b) has been amended in that it now provides that such actions to vacate, modify or set aside, must be commenced within twelve months after the date of confirmation of sale, and that other language in the section, as amended, is even a stronger indication of the legislative intent to place a stamp of finality on tax foreclosure proceedings after the expiration of the time prescribed.

". . . The instant action to vacate and set aside, not being commenced within six months from the date of confirmation of the sale, was brought too late." (pp. 167, 8, 9.)

In the third Shell case (*Shell Oil Co. v. Board of County Comm'rs*, 171 Kan. 595, 237 P. 2d 257), we said:

"Further consideration of this question convinces us of the soundness of the rule laid down in our original opinion, namely, that in proceedings governed by the tax foreclosure act (G. S. 1941 Supp. 79-2801 to 2809) every action either legal or equitable, to open, vacate, modify or set aside any judg-

ment rendered for taxes, or any order of sale or sale made thereunder, including those actions brought on the grounds and in the manner prescribed by the code of civil procedure, must be commenced within six months after the date of confirmation of sale (G. S. 1941 Supp. 79-2804b). We think it was within the power of the legislature to enact such a statute fixing a definite time within which such an action may be brought. While factually dissimilar, see *O'Keefe v. Behrens*, 73 Kan. 469, 85 Pac. 555, 8 L. R. A. (N. S.) 354; *James v. Logan*, 82 Kan. 285, 108 Pac. 81, 136 A. S. 105; *Erskine v. Dykes*, 158 Kan. 788, 150 P. 2d 322; *Schlemeyer v. Mellencamp*, 159 Kan. 544, 156 P. 2d 879; and *Bradley v. Hall*, 165 Kan. 358, 194 P. 2d 943, as bearing on the general subject matter." (p. 596.)

The case of *Moore v. Graham*, 151 Kan. 193, 98 P. 2d 111, was one to quiet title brought by a former owner against one who purchased real estate at a tax foreclosure sale. In disposing of plaintiff's contention of the invalidity of the tax foreclosure judgment, the court said:

"At the outset, plaintiff realizes that this is a collateral attack on a judgment and that she has the burden of overturning the judgment in the tax foreclosure action and that in order to accomplish this she must establish that the judgment in that case was void. She points out that the delinquent taxes prior to 1931 had been paid on July 26, 1932, the lot was bid in by the county on the first Tuesday in September, 1932, and the action to foreclose the tax lien was filed October 19, 1935; that G. S. 1935, 79-2801, provides for the foreclosure of tax liens in cases of this sort. The part of that statute with which we are interested is as follows:

"'That in all cases in which real estate has been or shall be sold and bid in by the county at any delinquent tax sale, and shall remain or shall have remained unredeemed and the certificate of sale untransferred for the period of three and one-fourth years after such sale, or any extension thereof as provided in sections 1 (79-2326) and 2 (79-2401) hereof, it shall be the duty of the county attorney of such county, when so ordered by the board of county commissioners, to institute an action in the district court in the name of the board of county commissioners, against the owners or supposed owners of such real estate, or so much thereof as the commissioners may direct.'

"It will be noted that this statute provides that the action to foreclose a tax lien cannot be commenced until the land in question shall have remained unredeemed from the sale to the county for three and one-fourth years. In this case three and one-fourth years had not elapsed since the lot was bid in for the 1931 taxes before the action to foreclose the tax lien was filed. She argues from this that the trial court did not have jurisdiction of the subject matter of the action, and hence the judgment was void. The district court had jurisdiction of the subject matter of foreclosure of tax liens. There can be no doubt about that. The matter which plaintiff argues made the judgment void could have been raised by answer. The mere fact that there was a fact which had it been pleaded would have been a defense to the action does not take away from the court jurisdiction of the subject matter. The subject matter of the action was the foreclosure of tax liens and the trial court had jurisdiction of this at all times. *Rowe v. Palmer*, 29 Kan. 337, was a case where the judgment

was based on service by publication. The judgment was attacked collaterally and a defect in the service was relied on. This court said:

" 'It is not necessary for us to decide whether the petition states such a cause of action as would be good if challenged by a demurrer. If it contains sufficient matter to challenge the attention of the court as to its merits, and such a case is thereby presented as to authorize the trial court to deliberate and act, a judgment rendered thereon is not void. From the petition and notice by publication the court acquired jurisdiction; thereafter it had the right to decide every question that occurred in the cause, and whether its decisions be correct or not, its judgment until reversed must be regarded as binding. Therefore, the objections made to the judgment in the collateral way in which plaintiffs sought to do upon the trial of the case were properly overruled.' (p. 340.)" (pp. 197, 8.)

See, also, *Anthony v. Smithson*, 70 Kan. 132, 78 Pac. 454; *Blair v. Blair*, 96 Kan. 757, 153 Pac. 544; *Miller v. Miller*, 89 Kan. 151, 130 Pac. 681; *Lodge v. Order of United Commercial Travelers*, 125 Kan. 26, 262 Pac. 598; *Stryker v. Welch*, 128 Kan. 632, 279 Pac. 25; and *Wharton v. Zenger*, 163 Kan. 745, 749, 186 P. 2d 287.

We hold that to place the tax foreclosure statute (79-2801, *et seq.*) in full effect and give it the field of operation it was intended to have requires us to overrule the second Magnolia case (*Magnolia Petroleum Co. v. Moyle*, 162 Kan. 133, 175 P. 2d 133); the third Magnolia case (*Magnolia Petroleum Co. v. Moyle*, 163 Kan. 368, 182 P. 2d 127); the first Shell case (*Shell Oil Co. v. Board of County Comm'rs*, 165 Kan. 642, 197 P. 2d 925), and the Allen case (*Board of County Comm'rs v. Allen*, 175 Kan. 460, 264 P. 2d 916) insofar as they are in conflict with the views expressed in this opinion. These decisions are overruled.

We conclude that the district court had jurisdiction of Phillips in cause No. 3700. Its petition discloses that more than eleven years had expired since September 16, 1943, when judgment was entered foreclosing the tax lien on the real estate described. There was no appeal from this judgment, nor does the record indicate that it has been modified or set aside. Phillips did not avail itself of the benefits of the statute (79-2804b) within the time prescribed and it cannot maintain the present action.

The district court erred in overruling defendants' demurrers. The judgment is reversed with directions to the district court to enter judgment for the defendants.

Smith, C. J., dissents.

Price, J., dissents from paragraphs 5 and 6 of the syllabus and corresponding portions of the opinion.